McCrary, Circuit Judge.
We will consider the grounds of demurrer to the first count in the order in which they are presented by counsel.
First—It is insisted that the facts alleged do not constitute fraud.
The allegation is, that defendant wrongfully, fraudulently and falsely certified and represented that the certificates were issued in pursuance of the order of the district court of Clinton county, Iowa; that they constituted a first lien, and that they were given for iron rails furnished for constructing said road; whereas, none of these things were true.
It is said that a fraudulent intent is not alleged; but it is difficult to see how representations, as to a matter of fact, can be wrongful, fraudulent and false without they are made with a fraudulent intent.
It is certainly necessary to prove the intent, and of course, it must be alleged, but no form of words is necessary. If the terms employed by the pleader, taken in their ordinary signification, necessarily include the idea of a fraudulent intent, that is enough. We must give to the term “fraudulently,” as found in the petition, the meaning which the law gives it, and which attaches to it in common usage, to wit: a deliberately planned purpose and intent to deceive and thereby gain an unlawful advantage. After stating what representations were made with sufficient particularity, it is enough to aver that they were wrongful, false- and fraudulent.
It is not necessary in such a pleading to define the meaning of these terms; and to say that the representations were made with intent to deceive, would add nothing to the allegation that they were falsely and fraudulently made. Langsdale v. Girten, 51 Ind., 99; Thomas v. Beebe, 25 N. Y., 244; Bayard v. Malcom, 2 John. R., 550; Norris v. Mil. Dock Co., 21 Wis., 131; Watson v. Chesire, 18 Iowa, 202.
Second—The next proposition of defendant’s counsel is,.that the first count of the petition is bad, because there is no allegation of fraud practiced by defendant upon the Joliet Iron and Steel Company, the payee of the certificates, or upon anyone else. The petition does not state that the false and fraudulent representations were made with the intent to defraud any particular individual, but it does state in substance, that, they were con *504 tained in certain written instruments, payable to the Joliet Iron and Steel Company, or bearer, and that relying upon the statements and representation contained in said instruments, the plaintiff purchased them from the payee, in good faith, in the usual course of business, before they were due, and without knowledge or notice that said representations were false, and paid their full face value.
Is this sufficient? To state the question as concisely as possible, it is this: Assuming that the representations contained in the certificates were false and fraudulent, that is, 'made with intent to deceive, are we to assume that they were made with intent to deceive whoever should purchase the paper?
In the very nature of the case the defendant must have intended that his representations would or might be acted upon by any person or persons purchasing the certificates, in the open market. He was placing paper upon the market, where it was likely to be bought and sold. The certificates were so drawn as to facilitate their negotiation; they were to pass from hand to hand without endorsement; they were to be payable to bearer. Why is it not a sound rule of law and of morals that makes the signer of such paper liable in damages to any one who may be deceived and injured by having relied upon statements of fact fraudulently inserted therein ? To say that it is necessary for plaintiff to show that defendant had a particular individual in view as the person to be defrauded, would be in effect to release him from liability for his representations; for a person who places such paper upon the market cannot know into whose hands it will pass, and therefore cannot have in view the person or persons who may be injured.
Thp matters of fact stated in the certificates gave them currency ; if true, they made them amply secure, and very desirable as investments. The controling question is, who had the right to act upon the representations, since the law will presume that they were addressed to all persons having such right. Is there anything on the face of the pap'er to indicate that the representations were addressed to and intended for a particular individual, and to no others ? I think, on the contrary, the representations were manifestly intended to be considered and acted upon by purchasers of the paper in the market.
*505 In Bruff v. Mali, 36 N. Y., 200, 205, it was held that officers of a railroad corporation were liable to any person injured by their misconduct in issuing false certificates of stock, and inducing a party to purchase the same by false and fraudulent representations as to the affairs of the company.
And see to same effect the following authorities: Bigelow on Fraud, 89-90; Cazeau v. Mali, 25 Barb., 598; Bartholemew v. Beatty, 15 Ohio, 660; Railroad Co. v. Schuyler, 34 N. Y., 30.
There is nothing in the authorities cited by defendant’s counsel, which, rightly understood, is in conflict with this rule. It is very true that an innocent misrepresentation—an honest mistake —cannot be made the ground of an action for fraud.
There must be an intent to defraud by false representations.
This must be alleged and proved. We hold that it is sufficiently alleged by the plaintiff If it is not true, let the defendant join issue.
We cannot give judgment in his favor while he stands here admitting the allegations of the petition. We construe the allegations of the petition to mean, that defendant executed and placed upon the market, certain instruments payable to bearer, and containing on their face false representations intended to deceive the purchasers thereof, whoever they might be. This being so, if the plaintiff purchased them in good faith, before maturity, without notice, relying upon the representations, he may recover, although the defendant had no purpose to defraud and deceive the plaintiff in particular, when he executed the instruments.
There is sufficient privity between the defendant and any purchaser of the certificates, to support the action. Nor is it any answer to say that the Joliet Iron and Steel Company, the payee of the certificates, must have participated in the fraud. The action is based upon defendant’s written representations contained in the body of the certificates, and upon these alone.
If we were at liberty to assume that similar false representations must have been made by the Iron and Steel Company to the plaintiff, this would not release the defendant from liability, nor would it be necessary to joih the Iron and Steel Company as a party defendant. The liability of the defendant depends upon the question whether he committed any fraud by his own conduct and representations, and it is not to be defeated by showing *506 that others have, or have not, committed like frauds. If, for example, the paper in question had passed through the hands of a number of persons after it left those of defendant, each in turn making the same false and fraudulent representations as to its validity, would it be insisted that the last purchaser would be obliged to join all the previous holders in one suit? How could he know who had held and transferred by delivery the paper, except in the case of the person from whom he obtained it? He might sue that person, but in order to recover, it would be necessary for him to allege and prove that he relied upon his representations, and not upon those embodied in the instrument. If he relied upon the latter, and acted in good faith upon them, his right of action would be against the maker of the paper—the party who, by signing it and placing it upon the market, certified to the truth of the statements it contained, and gave it currency.
In all such cases it is of course necessary for the plaintiff to show that he acted upon the false representations, and that he had a right to act upon them.
If the party suing is not the party to whom the false representations were made, it must appear that they were made with the intent that they should be acted upon by third parties, and that they were acted upon by him. The English cases cited by counsel for defendant illustrate and enforce this doctrine, and show that all that is required of the plaintiff, here, is to show some direct cQnnection between the defendant and himself in the communication of the certificates, and its influence upon plaintiff’s conduct in becoming a purchaser thereof. Barry v. Croskry, 2 J. & H., 117; Deck v. Gurney Law Rep., 6 House of Lords, 377; and Thompson on Liability of Officers, etc., 309.
We have seen no case which holds that it must be made to appear that the fraudulent representations were made directly and individually to the plaintiff. It is enough if he was authorized to act upon them, and did so. If it be true that the defendant issued the certificates honestly and in good faith, believing he had the right to do so, this is a perfect defense, but must be pleaded by way of answer. The petition being taken as true does not show such a state of facts.
Third—The second count omits the charge of fraud contained in the , first, and is founded upon the theory that the representa *507 tions contained in the certificate were warrantees upon which the plaintiff has the right to sue and recover. In order to sustain the sufficiency of this count it would be necessary to hold:
1. That the representations contained in the certificates were warrantees upon which the payee, the Joliet Iron and Steel Company, could have maintained an action. And,
2. That the plaintiff, as a subsequent purchaser of the paper, without an assignment, became entitled to maintain an action upon the warranty.
As to the first proposition, it is not averred that the.Joliet Iron and Steel Company relied upon the representations, or were in any wise deceived or defrauded thereby. On the contrary, it would seem that that company must have known all the facts known to the defendant, as it is fairly to be inferred from the face of the certificates that they were given to said company in payment for iron rails furnished by it. Such being the fact, it is manifest that the company could not have maintained an action upon the warranty.
A right of action upon a warranty, if it be assignable, is certainly not negotiable in the sense that the assignee may take a better right than the assignor possessed; and, it follows from this, that the plaintiff, even if regarded as the assignee of the right of action upon the warranty, can have no better right than its assignor..
And since the petition does not show that the assignor had any right of action upon the warranty, it does not show any right of action in the plaintiff.
As to the second proposition, we know of no authority in its support. A warranty is addressed to some particular person, and ordinarily that person alone can sue upon it. Under the very broad statute of Iowa on the subject of the assignment of causes of action, it might be assignable; but that it goes without assignment in a case like the present, we think cannot be maintained.
There is a clear distinction between a warranty, and a fraudulent misrepresentation. The former is a contract, and the action upon it is an action on contract. It is an action which can be maintained only by a party to the contract. The latter is a fraud, a wrong for which an action ex delicto lies in favor of the person injured.
E. S. Éailey, for plaintiff
Geo. B. Young, for defendant.
We conclude, that the plaintiff can recover upon the facts stated in the first count, upon proving the intent to defraud by executing the certificates and placing them upon the market, but he cannot recover alone upon the facts stated in the second count.
The demurrer is overruled as to the first count, and sustained as to the second.
Love, District Judge, concurs.