## MERCHANTS' NATIONAL BANK, APPELLANT, *v.* THEODORE ROBISON, RESPONDENT.

BANKS AND BANKING.— STOCK.— LIABILITY OF OFFICER ISSUING.— A party, who issues a certificate of bank stock before the bank is formed, to a person who, by means of the stock, obtains a loan from a third party, who has no notice of any of the circumstances, is liable to such third party for the amount of the loan.

ID.— ID.— ID.— DEFENSE.— It is no defense to an action brought against a party who has wrongfully issued bank stock upon which a loan has been obtained from a third party who had no knowledge of the circumstances, that the stock was issued in order to obtain a loan from a party who was cognizant of all the circumstances, and that the stock was issued solely for that purpose.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Messrs. Kimball and Allison* and *Mr. William H. Dickson,* for the appellant.

*Messrs. Evans and Rogers,* for the respondent.

BLACKBURN, J.:

This suit is brought to recover from the defendant the sum of $5,000, with the interest, loaned by the plaintiff to one J. P. Barbour, for the reason that the defendant assisted the said Barbour in fraudulently obtaining the loan. .The complaint, among other things, alleges that Barbour is now dead and his estate is wholly insolvent. The facts admitted and proven are substantially as follows:

The defendant and Barbour were engaged in promoting the establishment of a bank in Ogden, Utah. The defendant lived in Whatcheer, Iowa, and Barbour lived in Kansas City, Missouri. Of this bank the defendant expected to be vice president and general manager, and Barbour expected to be cashier. When the loan was made, the bank was not in operation or existence, only in expectancy. Subsequently, in September, 1890, it went into operation, and the defendant was made vice president, and Barbour cashier, and Barbour died in a short time, and wholly failed to pay the loan, or any part thereof. The loan was obtained on July 23, 1890, for which Barbour gave his note, payable November 1st following, and gave as collateral security the two following pretended certificates of stock:

| "No. 1. | 25 shares. |
| Capital, | Share, |
| 300,000 | 100 dollars |
| dollars. | each. |

"This is to certify that J. P. Barbour is entitled. to twenty-five shares of the capital stock of the Citizens' Bank of Ogden, Utah, which stock is transferable only on the books of the bank in person or by attorney, on the surrender of this certificate. Assessable. Not transferable while stockholder owes bank. In witness whereof the president and cashier of said bank have hereunto set their hands, this 10th day of July, 1890.

"J. P. BARBOUR, Cashier.

"THEO. ROBISON, Vice President and Mgr."

The second was like unto the first in every particular, only it was numbered "No. 2." These certificates were sent to Barbour at Kansas City, Missouri, by the defendant, signed by him without the seal of the bank being upon them, accompanied by the following letter:

"3,192.   The First National Bank of Whatcheer.   Theo. Robison, President.   J. L. Mitchell, Cashier.   Whatcheer, Ia., July 10th, 1890.   Dear Barbour: I send certificates of stock, as requested, with the exception of seal, and letters explain why I could not use it.   I was just a day too late.   You can use the stock as it is, and we will agree to make new ones as soon as we get seal, or he can send to Ogden, and we can put on seal and return.   This is the best we can do, and you can show this letter to him why did not use seal.   Hope you will get it shaped up all right.   Am loading car, and is a devil of a job.   Can't get all my things in, and don't know what to leave.   Will write again.
"Yrs.,        THEO. ROBISON."

Barbour exhibited these certificates, with letter, to the plaintiff's president, and obtained the loan on depositing them as collateral, and, in the presence of the president, signed them as cashier, and indorsed them as follows:   On the back of each certificate was the following:

"For value received, ——— hereby sell and assign to ——— the shares of stock within mentioned, and authorize ——— to make the necessary transfer on the books of the bank. Witness hand and seal this ——— day of ———, 18 —.
"J. P. BARBOUR.
"Witnessed by W. E. HUMPHREYS."

What conversation was had between Barbour and the plaintiff's president when the loan was negotiated is in the record, but was withdrawn by the plaintiff from the jury; hence it need not be considered, but I see no reason why the same is not proper testimony.   The certificates of stock were not paid for, were issued before there was any bank organization, but only one in contemplation, and were admitted to be worthless.   Afterwards the bank was organized and put in operation.   Some time in the following September Barbour got the loan on the security of these certificates, and did not pay the money, and died wholly

insolvent. The case was tried. The jury found for the defendant. Plaintiff made motion for new trial, motion overruled, and plaintiff appeals from the overruling the motion for a new trial, and from the judgment, and assigns many errors, only some of which it is necessary to mention.

The first error assigned is that the finding of the jury is against the evidence. I think this error is well taken. Bank stock is bought and sold in the open market, and passes from hand to hand almost as freely as negotiable paper, and the title is transferred without other formality than delivery when indorsed in blank, as this was; and he who takes it as collateral to secure a loan is a holder for value. A person who signs a certificate of stock of a bank represents to all the world that he is the officer he represents himself to be; that he is authorized to issue such certificate; that the person to whom it is issued has the interest in the bank the certificate purports to give; that the bank is an existing institution; that the shares of stock the certificates mention are fully paid for; and that the certificate is in all things what it purports to be. If any of these are known to be false, he who signs the certificate is liable to any one who may be injured thereby. These views are so fundamental, and so consonant with honesty and fair dealing, that they need no authority in their support, but I cite 2 Morse, Banks, § 713 (3d Ed. by Frank Parsons), and authorities therein mentioned. The defendant signed these certificates knowing there was no such banking institution in existence; that the shares of stock had not been paid for; that he had no authority to issue such certificates; and thereby put it in the power of Barbour to defraud the plaintiff corporation, and is such a participant in the fraud perpetrated by Barbour as to be liable as a principal. There is no evidence in the record to show that the plaintiff had any notice of the situation of the pretended bank, nor is there anything in the certificates themselves, or the letter

explaining the reason why the seal was not attached, to put a prudent man on his guard, or suggest to him the duty of making further inquiry. Therefore I think the defendant is liable, and the verdict should have been for plaintiff for the amount of the note and interest, unless his defense which we now consider is valid.

The defendant claims that he is not liable because the certificates of stock were delivered to Barbour to be used in negotiating a loan from one Griffith, and no other person, and said Griffith had agreed to make the loan on such certificates with full knowledge of the situation,— that the bank was not in existence, but was only in contemplation; that the defendant was not its vice-president and general manager, but only was to be when the organization was perfected; that Barbour was not its cashier, but only expected to be; and that the stock was not paid for, but only subscribed, and the money to be loaned was to be used to pay for the shares of stock; and that these certificates were issued in good faith by him, and delivered to Barbour to be used only with Griffith; and the testimony of the defendant fully supports this claim. But is this any defense? I think not. The plaintiff had no knowledge of these facts, or any of them, nor does any evidence appear in the record that would put it or its officers on inquiry in reference to them, unless it be the letter explaining why the seal was not attached to the certificates. But it does not seem to me that there is anything in that letter that would suggest to a prudent man the duty of making further inquiry in relation to the bank, and its existence and shareholders, or any other fact in reference thereto. It is unnecessary to examine the other assignments of error. The cause is reversed, with costs, and remanded, and a *venire de novo* awarded.

ANDERSON J., concurred.

ZANE, C. J., did not sit in this case.