CHARLES STICKEL vs. CHARLES H. ATWOOD.

PROVIDENCE—NOVEMBER 30, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Corporations. Bonds. Deceit. Liability of Officers of Corporation for False Representations.*

For a false statement on a corporate bond issued to the public, an officer of the corporation responsible therefor is liable in deceit as for personal representations.

(2) *Corporations. Bonds. Deceit. Liability of Officers of Corporation for False Representations.*

An officer of a corporation may be held liable for representations in which he has participated, even though the company is nominally the contracting party.

(3) *Corporations. Bonds. Deceit. Liability of Officers of Corporation for False Representations.*

In an action of deceit arising out of false representations, it is not necessary that the defendant should be personally connected with the particular transaction, if he is the active agent of the fraud which results in the transaction.

(4) *Bonds. Deceit. Security.*

Negotiable bonds contained this recital: "This bond is secured by all the property and assets of this company:"—

*Held*, that "secured" referred not to "security" generally, but meant that the bonds were made secure by some lien, on all the property of the company, peculiar to them.

*Held*, further, that the statement was positive and intended to be relied upon by purchasers; and the latter were not bound to make further inquiry as to the nature of the security.

TRESPASS ON THE CASE for deceit. Heard on demurrer to declaration, and demurrer overruled.

STINESS, C. J. This is an action for deceit. The declara-

tion sets out that the defendant was the president of the Platt
Albertype Company, a corporation, and as such caused to be is-
sued negotiable bonds signed with the name of said company,
by him as president, of the par value of $100 each, headed
"Ten year gold bonds." They were to be registered at the
Knickerbocker Trust Company, of New York, where both
bonds and interest were to be payable.

In each bond was this recital: "This bond is one of an is-
sue of Fifty Thousand Dollars ($50,000) of like tenor, and is
secured by all the property and assets of this company."
Bonds numbered from 1 to 20, inclusive, were issued by said
defendant, as president, to himself, and assigned by him, by
an indorsement in blank on the back of the bonds. The plain-
tiff, trusting and relying upon the representation contained
in said bonds, that they were secured by all the property and
assets of the company, and being thereby induced to believe
that he was getting special security, loaned to said com-
pany the sum of five hundred dollars, for which it gave its
promissory note and also ten of said bonds as security therefor.

The plaintiff avers that said bonds were not secured by all
the property and assets of the company, nor by any of them,
which defendant knew when he caused and permitted said
bonds to be issued, and of which the plaintiff was ignorant;
that said company became insolvent, and made an assignment
for the benefit of its creditors, and said bonds taken as secur-
ity became worthless, having been protested.

To this declaration the defendant demurs, upon the grounds,
(1) that the representations were made by the company and
not by the defendant; (2) it does not show that the defend-
ant was personally cognizant of the obtaining of the money
from the plaintiff on said bonds or connected therewith; (3)
that it does not show that he had actual knowledge of the
falsity of the words in the bond; (4) that the words relied on
import no special security; (5) that the words were such as
to put the plaintiff upon his inquiry; (6) that it does not
show the nature of the security the plaintiff was led to rely
on; (7) that it does not show that the plaintiff has suffered
damage, as the very security has been assigned for the bene-

fit of creditors, nor that the property could have been reached by the plaintiff, nor that it would have been sufficient to indemnify him to a greater degree than in the general distribution of the estate.

(1)     Upon the first question, assuming on demurrer the facts as alleged, we think the defendant is liable as for personal representations.   It appears that the defendant was not only an officer of the company, but the negotiator of the bonds, as they were issued to him.   His relation to them, therefore, was something more than that of an officer of the company.   He indorsed them, not as president, but as an individual.   But even as an officer he may be liable for acts done in the name of the corporation.   In the nature of things this must be so. While a corporation is an entity, which can hold property and be sued, yet it can only act and speak through its officers.   If it publishes a falsehood, it is done through them.   Directors have frequently been held liable for publishing false reports, although they purport to be the statements of the company. As said in *Bank* v. *Byers*, 139 Mo. 627–659: "No one should be permitted to escape personal liability for fraud practiced by himself, or in connection with others, upon another in his or their official character of president, director, or secretary of a private corporation, upon the ground that they were acting for the corporation.   To claim exemption on the ground of official responsibility, or that the fraud was committed for the benefit of the corporation, is equivalent to claiming that the corporation is liable for the fraud of its officers, and the officers themselves not liable."   The same doctrine was stated in *Hempfling* v. *Burr*, 59 Mich. 294, where Campbell, C. J., said: "It is quite likely that Burr's conduct may have been official, but we are not aware of any principle which will exempt a person from personal responsibility for fraud committed in a double capacity.   It is no part of official duty to commit fraud, and there are probably cases where a corporation may not be liable for the frauds of its officers.   In the present case there is no attempt to charge either corporation as such.   To set up official responsibility as the only one existing is equivalent to claiming that the bank is liable for the

cashier's fraud and the cashier himself not liable. This is a very singular result, and one which is too unreasonable to bear consideration." Undoubtedly, for acts within the proper scope of their authority officers are not liable. The true test as to the liability of a director is stated by Lord Cranworth in *Davidson* v. *Tulloch*, 2 L. T. 97, to be whether the transaction is such that the body of stockholders could not have sanctioned it; if they could not, as, for example,. where false reports are made, then such action lies, for it is an injury to each individual shareholder who was or might be deceived.

There can be no difference in principle between a false report and a false statement on a corporate bond which is issued to the public. Accordingly, we find that officers have been held liable in both classes of cases. *Clark* v. *Edgar*, 84 Mo. 106; *Ward* v. *Trimble*, 44 S. W. Rep. (Ky. 1898) 450; *Houston* v. *Thornton*, 29 S. E. Rep. (N. C. 1898) 827; *Seale* v. *Baker*, 70 Tex. 283; *Reed* v. *Peterson*, 91 Ill. 288; *Salmon* v. *Richardson*, 30 Conn. 360; *Clark* v. *Edgar*, 12 Mo. App. 345; *Arthur* v. *Griswold*, 55 N. Y. 400; *Wakeman* v. *Dalley*, 51 N. Y. 27. .

The case chiefly relied on by the defendant is *Van Weel* v. *Winston*, 115 U. S. 228. The case is radically different from the case at bar. A railroad company proposed to build an extension from its main line to Atchison, Kansas, "a distance of about 50 miles," and invited a subscription to bonds. A shorter connection was afterwards decided on, about 29 miles, and this variation was alleged by a bondholder as fraud under a circular stating 50 miles.

Mr. Justice Miller said: "It is obvious from the nature of these circulars that the branch road had not then been located, and that Mr. Winston, as an individual, could give no pledge on that subject which would bind the company, nor could he do so as president of the company. The road had yet to be located, and this could only be done by the board of directors of whom Mr. Winston was but one of eight or ten." He further stated that it was impossible to read the description of the line of road conveyed as security for the bonds without

seeing clearly that the line was not yet located—that its future location was to be governed by two considerations: 1. That it should be the most practicable route; and 2, that it should not *exceed* 50 miles."

The difference between a representation like this and a positive statement that bonds were secured is obvious.

The only other case cited by the defendant on this point is *Salem* v. *Adams*, 23 Pick. 256, which was an action for deceit by vendor in the sale of goods. The jury found for the defendant, upon the ground, apparently, that the plaintiffs had full opportunity for inspection. The court said, *obiter*, that where there was an express warranty in the contract of sale an action would lie. The point made by the defendant is that this means an action against the sellers; hence, in this case, the company, and not Atwood, the president.

(2)    We do not see that this is implied.

We are of the opinion that an officer may be held liable for representations in which he has participated, even though the company is nominally the contracting party.

The second ground of demurrer is that there is nothing to show that the defendant knew of the sale of the bonds to the plaintiff, or that he had any connection therewith.

(3)    It is not necessary that the defendant should be personally connected with the particular transaction, if he is the active agent of the fraud which results in the transaction. Thus, directors have been held liable, in cases already cited, for false statements published, by means of which others have been misled, though not directly, by those officers. So in *Leonard* v. *Springer*, 197 Ill. 532, it was said: "It is not necessary, in an action of this kind, to show that the defendant had any interest in the subject matter or that he received any benefit therefrom. *Eames* v. *Morgan*, 37 Ill. 260; *Endsley* v. *Johns*, 120 Ill. 469. He is liable not upon any idea of benefit to himself, but because of his wrongful act and the consequent injury to the other party. 14 Am. & Eng. Ency. of Law, 2nd ed. 153." In that case the notes purporting to be secured by a mortgage, which was fraudulent, were not sold to the plain-

tiff by the defendant, but by a broker, showing the statements on which the plaintiff relied.

*Nash* v. *Minnesota*, 159 Mass. 437, held that a corporation was liable, to purchasers of bonds from one who had the sale of them, for statements in a letter to him which was shown to purchasers and on which they relied.

It affirms the rule that one may be liable, though he does not deal directly with the purchaser.

The third ground is not mentioned in the defendant's brief, probably for the reason that the declaration does state that the representation relied on in this case was known to be false by the defendant.

(4)    The fourth ground is that the statement that the bond was "secured by all the property and assets of the company" imports no special security.

The argument is that "security" is a general word, including liens by mortgage or pledge, notes, bonds, surety, or anything that guards or protects. This is entirely true in the general application of the word. It is a term used to cover all kinds of evidences of assets. The securities held by a bank, for example, include its bonds and notes. It may, however, have a limited meaning, as, in *Easton* v. *Ormsby*, 18 R. I. 309, "securities given by an insolvent debtor," under Pub. Stat. cap. 237, § 15, was held to mean such security as created a lien on the debtor's estate. The word must be taken in its relation and use. But while, for the purpose of describing commercial assets in a single word, it may have a broad significance, it does not follow that the word "secured" is equally broad as the correlative noun. "Secured" is not a word of description; it implies an act. A creditor who takes a note for his debt is never understood to be a secured creditor. A bond, which carries nothing more than a promise to pay, is no more a security than a promissory note. A creditor who should claim to be secured over others because he had the note of the common debtor, would hardly be taken seriously. If he had the note of the third party, he might claim to be secured. When a bond or note is "secured," it must mean that there is something behind it not common to other

creditors, or it means nothing. The words in this case, therefore, meant that the bonds were made secure by some lien, on all the property of the company, which was peculiar to them, or else it was nonsense. It is a specific statement relating to specific property. Secured creditors are recognized as a class, both in law and usage, not because they can look to the debtor's property, as all creditors can, but because they have some such special security.

The natural, common, and necessary implication of the words "secured by all the property and assets of the company" clearly imports a special security. *Whiting* v. *Price,* 169 Mass. 576.

The next ground of demurrer is that the words on the bond were such as to put the plaintiff upon inquiry as to the nature of the security.

The defendant claims that as the words do not specify any particular form of security they are indefinite, and hence demand inquiry. Again he cites *Van Weel* v. *Winston, supra,* where Mr. Justice Miller said: "Every prudent man, knowing that this mortgage was his main security, would examine it, or his agent would, before investing his money." In that case a mortgage had in fact been given. One buying under it would, of course, be held to inquiry as to its terms and scope. There was no false representation in regard to it. The bondholders were expressly referred to it. If, in the present case, the bonds had specified a mortgage, and there was one, the bondholders would, of course, have to examine it for its terms. That is a very different matter from an assertion of security when none existed. Most of the other authorities relied on by the defendant were like the one just cited, where the fact stated was true and the extent of its application was held to be matter of inquiry. So, in this case, if there had been any security on the property of the company, the plaintiff would have been put upon his inquiry to ascertain what it was, because the information would have been true as far as it went. Not so with a false statement.

The distinction as to false statements is well stated in *Robertson* v. *Parks,* 76 Md. 118, cited by the defendant, as fol-

lows: "It is not necessary in all cases to show that the defendant *knew* at the time that the representation made by him was false in fact. It is sufficient if the statement be made for a fraudulent purpose and without a *bona fide* belief in its truth by the defendant, with the intention of inducing the plaintiff to do an act, and that act is done, in reliance upon the truth of the representation, which turns out to be false in fact."

It then goes on to say: "A representation which merely amounts to a statement of opinion, judgment, probability, or expectation, or is vague and indefinite in its nature and terms, or is merely a loose, conjectural, or exaggerated statement, goes for naught, though it may not be true; for a party is not justified in placing reliance on such statements or representations. Such an indefinite or speculative representation should put the person to whom it is made upon inquiry; and if he chooses to put his faith in such a statement and abstains from inquiry he can have no ground of complaint." It is evident that the court had in mind a representation very different from the one before us.

The defendant claims that the representation here is within the statement of the learned court, because it is vague and indefinite in not stating the form of security. It is a positive statement, in a solemn instrument under seal, asserting the fact that the bonds were "secured on all the property and assets of the company." It is neither vague nor indefinite, except as to the form of the security. If the plaintiff had reason to believe from the assertion, as he might, that all the property of the company was secured to the payment of these bonds, he might naturally give little heed to the form, whether it was by mortgage, trust, pledge, or other equitable title or lien.

In *Leonard* v. *Springer*, 197 Ill. 532, the court said: "If appellee concocted a scheme for placing fraudulent and worthless securities upon the market, he cannot be heard to say that parties induced to buy them shall suffer for their failure or neglect to discover his fraud. The rule is that a party guilty of fraudulent conduct, whereby he induces another to act, will

not be allowed to impute negligence to the latter as against his own deliberate fraud."

. In view of the positive statement on the face of the bonds, evidently intended as one to be relied on by purchasers, the plaintiff was not bound to make further inquiry.

The sixth ground of demurrer, that the declaration does not state the nature of the security the plaintiff was led to rely on, is of no consequence when the fact appears that he was led to believe that there was some kind of security, when there was none at all.

The last ground is that the declaration does not show that the plaintiff has suffered damage.

It states that the company has become insolvent, has made an assignment, and that the money advanced has been wholly lost.   While the declaration would have been more complete by stating that the company had property, we think that the allegations are sufficient for the purposes of pleading.

Demurrer overruled.

*Lewis A. Waterman and Arthur M. Allen,* for plaintiffs.
*John W. Hogan and Philip S. Knauer,* for defendant.