## CLEVELAND WRECKING CO. v. STRUCK CONST. CO. et al.

### No. 212.

District Court, W. D. Kentucky.

Sept. 15, 1941.

See, also, 41 F.Supp. 67.

James E. Fahey, and Woodward, Dawson & Hobson, all of Louisville, Ky., for plaintiff.

Wm. Furlong and Wm. W. Crawford, both of Louisville, Ky., for defendant Struck Const. Co.

Lawrence S. Poston and Hal O. Williams, both of Louisville, Ky., for defendant City of Louisville Municipal Housing Commission.

MILLER, District Judge.

This action was brought by the plaintiff Cleveland Wrecking Company to recover from the defendants Struck Construction Company and City of Louisville Municipal Housing Commission the sum of $6,762.71 with interest, being the damage suffered by reason of being deprived through acts of the defendants of certain fixtures and equipment which the plaintiff claims it was entitled to as salvage from a demolition job undertaken by it. A jury trial was waived by the parties.

### Findings of Fact

The plaintiff Cleveland Wrecking Company (hereinafter referred to as Wrecking Company) is a Maryland corporation engaged in demolition work. The defendant Struck Construction Company (hereinafter referred to as Construction Company) is a Kentucky corporation engaged in the contracting and construction business. The defendant City of Louisville Municipal Housing Commission (hereinafter referred to as Housing Commission) is a Kentucky corporation created for the purpose of constructing and operating Municipal Low Rent Housing Projects under the provisions of Sections 2741x1 to 2741x10 of the Kentucky Statutes, and with powers as conferred therein.

Shortly prior to April 13, 1939, the Housing Commission made plans to acquire title to a tract of land in Louisville, Kentucky, and to erect thereon a low rent housing project, which it designated as West End Project Ky. 1—2. Under date of April 13, 1939 it issued in book form its "Specifications for Low Rent Housing Project Ky. 1—2," which contained a complete and detailed recitation of the work to be done, and which were distributed by the Housing Commission to general contractors and subcontractors for the purpose of bidding upon the proposed construction. The Housing Commission requested bids to be submitted by May 4, 1939. The plaintiff became interested as a sub-contractor in doing the demolition work and some of its officers familiarized themselves with the specifications and in particular with those pertaining to the demolition and clearing of the site. Sections 14(a) and (b) of the Special Conditions set out in said Specifications provided as follows:

"14. Ownership and Existing Conditions of Site:

"(a) Upon receipt of notice by the Contractor for . Demolition, Construction & Site Improvement to proceed with the work on any part or all of the premises, all right, title and interest of the Local Authority in and to the buildings, property and improvements to be demolished and removed by said Contractor, the structures then located on said part or all of the premises described in such notice shall be deemed to be vested in said Contractor, who shall accept said premises in the condition then existing and the Local Authority shall not be liable for damages due to pilferage or other causes, there shall be no adjustment in the Contract Price because of any change in the condition of said premises subsequent to the date of advertisement for bids. The Local Authority will however take every reasonable precaution to guard the premises, by employing watchmen carrying fire and windstorm insurance in order to preserve existing values, up to and including the date of receipt of notice of said contractor to proceed. Subject to the applicable provisions of the Contract Documents, said Contractor shall be entitled to the buildings, structures and improvements to be demolished and removed including all fences and all lumber, brick, structural steel, glass, piping, miscellaneous metal, etc., salvaged from the buildings, but all piping, conduits, cables and other equipment belonging to the public service companies shall not become the property of said Contractor unless abandoned by the various companies owning or controlling the same; and personal property of third persons or tenants shall not become the property of said Contractor.

"(b) It shall be the duty of said Contractor to secure from the Local Authority all necessary information regarding the record of conditions of conveyance and occupan-

cy of properties and improvements, on the site, prior to submitting a bid."

Pursuant to provisions of Special Condition 14(b) the plaintiff requested the Housing Commission to furnish it with all necessary information regarding the conditions of conveyance and occupancy of properties and improvements on the site, which would affect the properties and salvage which the demolition contractor would receive for part consideration for his work. Under date of April 29, 1939, the Housing Commission sent to the Wrecking Company certain data pertaining to the improvements to be demolished, which contained data with reference to property located at 1016–1024 Cedar Street, Louisville, Kentucky, belonging to Benjamin W. Richard and Cecelia T. Richard, and which was under lease to Shoppenhorst Laundry at the time, and pertaining to property at 1114–1122 West Liberty Street, Louisville, Kentucky, belonging to the Campbell Company. With reference to these two pieces of property the data stated "these owners will have the right to remove all fixtures and equipment pertaining to their business." Immediately thereafter the plaintiff's engineers and employees carefully inspected the improvements to be demolished, including the Shoppenhorst property and the Campbell property and made an inventory of all equipment and fixtures pertaining to the use and construction of the buildings. Based upon this inspection and upon its valuation of the salvage which could be obtained by the wrecker upon the demolition of the said improvements, the plaintiff submitted to the defendant Struck Construction Company and to other contractors its bid for doing the specified demolition work. Thereafter the Construction Company submitted its bid on May 4, 1939, to the Housing Commission, which bid was based in part upon the plaintiff's bid to it. The Housing Commission accepted the bid of the Construction Company, and on May 24, 1939, executed a written contract with the Construction Company to that effect. The Construction Company immediately notified the plaintiff that its bid for the demolition and site clearing work was accepted, and a written contract was entered into between the plaintiff and the Construction Company for this work on June 9, 1939. The contract between the Housing Commission and the Construction Company contained this provision: "All works shall be executed in strict accordance with the advertisement for bids dated April 13, 1939, specifications

and the drawings which are made a part hereof and designated as follows * * *". The contract between the Construction Company and the plaintiff contained this provision:

"In consideration of the contract price to be paid the Contractor to the Sub-Contractor, the Sub-Contractor agrees with the Contractor as follows:

"1. To furnish all materials, labor, services, tools, equipment, utensils and other things necessary to construct and complete the work to be done under this sub-contract in strict accordance with the contract between the Contractor and the Louisville Municipal Housing Commission as referred to above. The Sub-Contractor agrees to be bound to the General Contractor in all respects and in like manner as the Contractor is bound to the Louisville Municipal Housing Commission so far as the contract between the Contractor and the Commission applies to the work to be done by the Sub-Contractor. The Sub-Contractor represents and declares that he has read and fully informed himself as to the contract between the Contractor and the Commission and accepts the obligation assumed hereunder with full knowledge of his obligations."

Thereafter on May 29, 1939 the Housing Commission completed its purchase of the Campbell Company property (1114–1122 W. Liberty Street) and secured from the Campbell Company its deed of that date conveying the property to the Housing Commission. This deed was recorded on the same day and contained the following provision: "The party of the first part hereby reserves the right to remove and retain, from said property, all machinery and equipment, boilers, pipes, elevator, wiring and fixtures, and in fact everything contained in the factory building on said property, except the wall, roofs, floors, doors and windows, it being understood that said first party shall be under no obligation to remove any of said above property from said premises, which said first party does not want, nor shall said first party be liable in any degree for the condition in which the said premises are left." Thereafter on May 31, 1939, the Housing Commission completed its purchase of the Shoppenhorst property (1016–1024 Cedar Street) and received from Benjamin M. Richard and his wife their deed dated May 31, 1939, conveying this property to the Housing Commission. This deed was recorded on the

same day and contained this provision: "The first *parties* reserve the right to remove and retain, from the property herein conveyed, all machinery, equipment, boilers, pipes, wiring and fixtures contained in the building on the property."

On June 1, 1939 the Housing Commission issued to the Construction Company the initial proceed order, effective as of June 12, 1939, authorizing it to proceed with the construction of the work included under its contract of May 24, 1939. The plaintiff went into the two properties involved in this action, for the purpose of demolition of these respective improvements, immediately after receiving the proceed order thereon, which dates of entry were September 18, 1939, for the Shoppenhorst property and October 25, 1939, for the Campbell property. At those times the plaintiff found that the former owners had removed from their respective properties the fixtures and equipment hereinafter set out, which fixtures and equipment were in the two pieces of property at the time when the plaintiff inspected them for the purpose of submitting its bid for the demolition work. These fixtures and equipment had been removed without the consent or authority of the plaintiff and had been disposed of to purchasers thereof so that the plaintiff did not in the subsequent demolition work acquire the possession of the same and was deprived of the salvage value resulting therefrom. The said fixtures and equipment so removed by the respective owners is as follows, with its fair and reasonable market value as found by the Court indicated thereon:

Property at 1016–1024 Cedar Street, owned by Benjamin W. Richard and Cecelia T. Richard and under lease to Shoppenhorst Laundry—

| Fixtures and Equipment Removed | Value |
| --- | --- |
| Low tank toilet combination...... | $ 10.00 |
| 2 wash basins................... | 7.50 |
| Three part laundry tray.......... | 5.00 |
| 1000 ft. tube radiation........... | 200.00 |
| 1500 ft. pipe radiation........... | 90.09 |
| Triple window and frame......... | 15.00 |
| Belt driven hoist unit from elevator | 25.00 |
| 100 ft. elevator cable............ | 7.50 |
| 6 tons sprinkler pipe............ | 150.00 |
| Large tube boiler............... | 100.00 |
| 7 tons miscellaneous pipe........ | 210.00 |
| 75 electric light sockets......... | 3.75 |
| 10 electric fuse and switch boxes | 10.00 |
| Total ..................... | $833.75 |

Property at 1114–1122 W. Liberty Street owned by the Campbell Company:

| Fixtures and Equipment Removed | Value |
| --- | --- |
| Sprinkler System .............. | $ 713.50 |
| 2500 Ft. Electric Conduit and wire | 75.00 |
| 3 Low Tank Toilet Combinations | 30.00 |
| 3 Wall Lavatories............. | 20.00 |
| 2 Showers .................... | 5.00 |
| 1000 ft. Hot Water Wall Radiation | 20.00 |
| Hot water & steam radiators.... | 20.00 |
| 1 Electric elevator............. | 1050.00 |
| 2 hand power elevators.......... | 20.00 |
| Drummond and Walton steam boilers ................... | 200.00 |
| 4 steam pumps................. | 150.00 |
| Smokestack ................... | 50.00 |
| 3 Vogel Toilets................ | 30.00 |
| 1 door check.................. | 2.50 |
| 1–30 ft. Steel Ladder........... | 15.00 |
| 13 tons water and steam pipe and pipe radiation ............... | 300.00 |
| Total .................... | $2701.00 |

## Conclusions of Law

There is no liability on the part of the defendant Struck Construction Company to the plaintiff Cleveland Wrecking Company. The contract between these two parties was not breached by this defendant, and the acts complained of by the plaintiff as causing the alleged damage were not the acts of this defendant, or any of its agents or employees.

There was no contractual relationship existing between the plaintiff and the defendant Housing Commission. Both of these parties had their separate contracts with the Construction Company, but there was no contract between the Wrecking Company and the Housing Commission. The plaintiff's cause of action, if any exists, must therefore sound in tort. The plaintiff claims that its cause of action is for damages caused by the fraud and deceit on the part of the Housing Commission by misrepresenting to it the true condition of the title to the salvage involved and thereby causing the plaintiff to enter into the sub-contract with the Construction Company in reliance upon these misrepresentations, which resulted in the damage complained of. This theory of liability is sustained by the Kentucky Court of Appeals in its decision in Highland Motor Transfer Company v. Heyburn Building Company, 237 Ky. 337, 35 S.W.2d 521, in which it is held that the right to recover for deceit is

not restricted to the immediate parties to the contract, but that if a third party is injured by the deceit he can recover against the one who practiced the deceit in the first place. The necessary elements constituting such a cause of action are shown to exist by the proof, and the plaintiff is entitled to recover the damages suffered unless some one of the contentions advanced by the Housing Commission as an affirmative defence is sustained as a matter of law.

■ The Housing Commission contends that a proper construction of its representation to the plaintiff contained in its letter of April 29, 1939, relieves it from any liability in the matter. This letter and inclosures advised the plaintiff with respect to the two pieces of property under consideration "these owners will have the right to remove all fixtures and equipment pertaining to their business." The defendant contends that this should be construed as representing to the plaintiff that the owners would have the right to remove all fixtures of every kind and also such equipment as pertained to the business of the owner. The plaintiff contends that this represented that the owners would have the right to remove only such fixtures as pertained to their business and such equipment as pertained to their business. This same question has been previously raised by the defendants' motion to dismiss the complaint, which question was discussed at length and overruled in a memorandum opinion by the Court of February 28, 1941. 41 F.Supp. 67. However, the defendant now points out that the language of the complaint, to which the Court necessarily directed its attention in passing on the motion to dismiss, is substantially different from the words actually used by the Housing Commission in making its representations to the Wrecking Company. Although the words now under consideration are different in some respects from the wording of the complaint, yet the difference is not so material as to convince the Court that its previous construction of the representations made by the plaintiff is incorrect. The principal reasons given by the Court in its ruling still apply; the change in the language only eliminates some of the supporting reasons enumerated by the Court. Accordingly, the Court adheres to its prior ruling and construes the representations on the part of the Housing Commission as meaning that the owners of the property would have the right to remove only such fixtures as pertained to their business and such equipment as pertained to their business. The evidence shows that the fixtures and equipment under consideration were such as are found generally in such structures and did not pertain to the business of the owners within the meaning of the phrase.

■■ Defendant further contends that the plaintiff has failed to show any legal claim or title in it to the fixtures and equipment so removed, and that a custom and usage of the trade can not be relied upon unless pleaded and proven, which was not done in this case. This contention overlooks the provisions of Section 14(a) of the Special Conditions set out in the book of Specificiations which provides that subject to the applicable provisions of the contract documents the contractor shall be entitled to the buildings to be demolished with the materials salvaged therefrom. The contract between the Housing Commission and the Construction Company, and the contract between the Construction Company and the plaintiff contain provisions incorporating by reference the Specifications referred to. The provision that there shall be no adjustment in the contract price because of any change in the condition of the premises subsequent to the date of advertisement for bids obviously refers to such changes as might be caused by deterioration, action of the elements, or pilferage, and has no reference to such changes as the Housing Commission permitted by contract with the owners.

■ Defendant's main defense is that it was engaged in the performance of a governmental function, and that no liability exists against a Municipal corporation or a quasi-municipal corporation for its torts committed in carrying out such governmental functions. The Court of Appeals of Kentucky has held that in the construction of low rent housing projects the Housing Commission is carrying out a work of purely public nature and performing a governmental function of the City. Spahn v. Stewart, 268 Ky. 97, 103 S.W.2d 651; City of Louisville v. German, 286 Ky. 477, 150 S.W.2d 931. A municipal corporation in the preservation of the peace, public health, maintenance of good order and the enforcement of the laws for the safety of the public, possesses governmental functions and represents the State. Under such conditions it is the general rule that it is not liable for the torts of its offi-

76

cers or agents. Board of Park Commissioners v. Prinz, 127 Ky. 460, 105 S.W. 948; City of Harlan v. Peaveley, 224 Ky. 338, 6 S.W.2d 270; Having v. City of Covington, 78 S.W. 431, 25 Ky.Law Rep. 1617; Twyman v. Board, City of Frankfort, 117 Ky. 518, 78 S.W. 446, 64 L.R.A. 572, 4 Ann. Cas. 622; Smith's Adm'r v. Commissioners of Sewerage, 146 Ky. 562, 143 S.W. 3, 38 L.R.A.,N.S., 151.

This immunity from liability when in the performance of a governmental function has not been limited to cases of negligence, but has also been applied to deliberate tortious acts. Murphy v. Phelps, 241 Ky. 339, 43 S.W.2d 1010; Hershberg v. City of Barbourville, 142 Ky. 60, 133 S.W. 985, 34 L.R.A.,N.S., 141, Ann.Cas.1912D, 189; Morgan v. City of Shelbyville, Ky., 121 S. W. 617.

Some exceptions to the foregoing general rule have, however, become well established. A municipality is not relieved of responsibility for its negligence in failing to maintain its streets in a reasonably safe condition for travel. City of Louisville v. Bridwell, 150 Ky. 589, 150 S. W. 672; Lampton & Burks v. Wood, 199 Ky. 250, 250 S.W. 980. The exemption rule has no application where the acts of the city constitute the maintenance of a private nuisance, or in effect amount to a taking of property within the meaning of Section 242 of the Kentucky Constitution. City of Louisville v. Hehemann, 161 Ky. 523, 171 S.W. 165, L.R.A.1915C, 747; City of Ludlow v. Commonwealth, 247 Ky. 166, 56 S.W.2d 958; City of Georgetown v. Ammerman, 143 Ky. 209, 136 S.W. 202; Madisonville v. Hardman, 92 S.W. 930, 29 Ky.Law Rep. 253; Clayton v. City of Henderson, 103 Ky. 228, 44 S.W. 667, 44 L.R.A. 474; City of Paducah v. Allen, 111 Ky. 361, 63 S.W. 981, 98 Am.St.Rep. 422; Hoffman v. City of Bristol, 113 Conn. 386, 155 A. 499, 75 A.L.R. 1191, and annotation at p. 1196.

It seems well settled that a municipal corporation is liable in tort for acts constituting infringement of a patent. City of Akron v. Bone, 6 Cir., 221 F. 944, and cases therein cited. The Courts have drawn a distinction between torts resulting in personal injuries and torts causing injury to property rights, imposing liability in the latter cases even though the acts were done in the performance of public duties. Board of Park Commissioners v. Prinz, supra, 127 Ky. at page 471, 105 S.W. 948; Board of Council, Frankfort v. Hall, 227 Ky. 599, 13 S.W.2d 755; Hauns v. Central Kentucky Asylum, 103 Ky. 562, 45 S.W. 890. This distinction is particularly well taken in cases where property rights are violated by express authority of the municipal government, or the doing of the act is subsequently ratified, and the city retains and enjoys the benefits resulting therefrom. Schussler v. Hennepin County Commissioners, 67 Minn. 412, 70 N.W. 6, 39 L.R.A. 75, 80, 64 Am.St.Rep. 424; Boyer v. Kanawha County Court, 92 W.Va. 424, 114 S.E. 750; 19 R.C.L., Municipal Corporations, Sect. 370. The present case involves affirmative action on the part of the corporation itself, with resulting damage to the property rights of the plaintiff and corresponding financial gain to the corporation. It properly falls within the exceptions to general rule, and liability exists on the part of the Housing Commission.

The petition of the plaintiff is accordingly dismissed as to defendant Struck Construction Company, but the plaintiff is entitled to judgment against the defendant City of Louisville Municipal Housing Commission in the sum of $3,534.75. Since the plaintiff's claim was an unliquidated one, the allowance of interest is in the discretion of the Court. Congoleum-Nairn, Inc., v. M. Livingston & Co., 257 Ky. 573, 78 S.W.2d 781; Fidelity & Casualty Co. of New York v. Downey, 284 Ky. 72, 143 S.W.2d 869. Interest will run from the date of judgment.