JOSEPH v. FARNSWORTH RADIO & TELEVISION CORP. et al.

No. 252, Docket 22310.

United States Court of Appeals Second Circuit.

Argued May 15, 1952.

Decided June 30, 1952.

Frank, J., dissented.

———————◆———————

Barney Rosenstein and Leo Praeger, New York City, for appellants; Bernard S. Kanton, New York City, of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for appellees; S. Hazard Gillespie, Jr., and Francis W. Phillips, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Gilmour; Samuel J. Silverman, New York City, of counsel.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK. Circuit Judges.

PER CURIAM.

The order is affirmed on the opinion below, D.C., 99 F.Supp. 701, and the subsequent decision in Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461 wherein we concluded "that Rule X–10B–5 extended protection only to the defrauded purchaser or seller", 193 F.2d page 464.

FRANK, Circuit Judge (dissenting).[1]

1. The pertinent sections of the complaint may be summarized thus: The defendants, directors of the Farnsworth Company, published false statements of material facts concerning the financial condition of the company. This the defendants did to induce purchases of shares of stock in that company owned by them. Soon after defendants had sold all their shares of stock, the plaintiffs, misled by the false statements, purchased some Farnsworth shares on the stock exchange where Farnsworth stock was listed. When, later, the true facts about the company's financial condition were disclosed, the price of the stock fell. Plaintiffs sold at the lower price, with resultant damage.[2] On motion by the defendants, the trial judge dismissed the complaint. His basic reason was the absence of any "semblance of privity" between plaintiffs and defendants.

2. His decision has been excellently discussed and criticized in a Comment in 4 Stanford Law Review (1952) 308, from which I quote as follows:

"Rule X10B–5 of the Securities and Exchange Commission, passed pursuant to § 78j(b) of the Securities and Exchange Act,[1] provides: It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of

commerce or of the mails, or of any facility of any national securities exchange * * * (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.'

---

1. I have not participated in this case so far as it affects the defendant Gilmour.

2. Under the liberal pleading rules, the complaint sufficiently alleged the facts above stated. See, e. g., Dioguardi v. Durning, 2 Cir., 139 F.2d 774; 2 Moore, Federal Practice, par. 8.01 et seq. (2d ed.1948).

"1. 48 Stat. 891 (1934), 15 U.S.C. 78j(b) 1946: 'Manipulative and deceptive devices. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate

any national securities exchange, (a) to employ any device, scheme, or artifice to defraud. (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.[2]

"The Farnsworth case raises the question of what class of persons may recover in an action for fraud under the Statute and the Rule. The court held that the plaintiffs were outside the class of persons entitled to recover. The reason given by the court, lack of 'privity,' is not satisfactory.

"One purpose of the Act is to extend common-law liability or fraud in security transactions.[3] Even at common law, there was no requirement of privity of contract in an action for fraud.[4] If privity of contract was not required at common law, a fortiori, privity of contract is not required under the statute and the rule.[5]

"The common law, however, did require that the person relying upon a misrepresentation be within the ambit of persons whom the defendant actually intended to defraud. In Peek v. Gurney [6] the defendant directors issued a prospectus containing misrepresentations and nondisclosures of material facts to induce persons to buy stock directly from the defendant company. The plaintiff, relying on the prospectus, bought stock, not from the defendant, but from another on the market. The House of Lords denied recovery for fraud since defendants did not intend to induce the plaintiff to enter the particular transaction which occasioned plaintiff's loss. The Restatement of Torts has adopted this limitation: * * * the maker of a fraudulent misrepresentation is subject to liability * * * only to those persons to whom it is made with the intent to cause them to act in reliance upon it and to such persons only for the pecuniary harm suffered by them by relying upon it in the transaction or type of transaction in which the maker intended to influence their conduct.[7]

"This rule would support the result in the principal case, and may well have been what the court meant by 'some semblance of privity.'

"But the modern tendency is to depart from the limitation of Peek v. Gurney.[8] Liability has been imposed

"2. 17 Code Fed.Regs. § 240.10b–5 (1949).

"3. See note 13 infra. * * * Rule X10B–5(b), contrary to the common law, allows recovery for non-disclosure. See also Norris & Hirshberg v. Securities and Exchange Commission, 1949, 85 U.S. App.D.C. 268, 177 F.2d 228; Fry v. Schumaker, D.C.E.D.Pa.1947, 83 F.Supp. 476, 478; Slavin v. Germantown Fire Ins. Co., 3 Cir., 1949, 174 F.2d 799, 815.

"4. Pasley v. Freeman, 3 T.R. 51, 100 Eng.Rep. 450 (K.B. 1789) (first case holding action for deceit would lie where plaintiff had no dealings with the defendant; rather, plaintiff had been induced by defendant's misrepresentations to deal with a third person); National Bank of Savannah v. Kershaw Oil Mill, 4 Cir., 1912, 202 F. 90, certiorari denied 1913, 232 U.S. 725, 34 S.Ct. 602, 58 L.Ed. 816; Cleveland Wrecking Co. v. Struck Construction Co., D.C.W.D.Ky.1941, 41 F.Supp. 70; Bauman v. Bowles, 1869, 51 Ill. 380. See Restatement, Torts c. 22, scope note, and § 533 (1938).

"5. ........ But cf. Birnbaum v. Newport Steel Corp., D.C.S.D.N.Y. 1951, 98 F.Supp. 506.

"6. 1873, L.R. 6 H.L. 377; cf. Wells v. Cook, 1865, 16 Ohio St. 67.

"7. Restatement, Torts § 531 (1938). Note, however, the qualifications of § 532 (misrepresentations incorporated in a document) and § 536 (misrepresentation in a report required by statute).

"8. Prosser, Torts 732 (1941).

where plaintiffs have relied on intentional misrepresentations though the defendant had no intent to influence the particular person or class of persons. This relaxation of the Peek v. Gurney limitation has occurred primarily in cases where false statements were embodied in negotiable instruments.[9] It has not, as yet, been extended to stock transactions such as those in the principal case.[10] The extension of liability is predicated upon reasonable anticipation by the defendant that one in the plaintiff's position would rely. In the principal case, there were intentional misrepresentations and nondisclosures calculated to portray the financial stability of the Corporation. It does not tax credulity to say that the defendants might have foreseen and anticipated reliance by such persons as the plaintiffs.

"In spite of the recent trend to the contrary, Peek v. Gurney may still be the weight of authority.[11] The crucial question then is, should this common-law limitation be applied under the Statute and the Rule? Or, does the Statute command a broader interpretation concurrent with the modern tendency away from the Peek v. Gurney limitation?

"The language of Rule X10B–5 is broad. It speaks of ' * * * any act, practice, or course of business which operates or would operate as a fraud or deceit upon *any person, in connection with the purchase or sale of any security.* [Emphasis added.][12] Furthermore, House and Senate Reports of the Securities and Exchange Act support the conclusion that the class of persons entitled to actionably rely on false statements is not the narrow or restricted class of Peek v. Gurney.[13]

"The language and legislative history of the Statute and Rule, and the

"9. Bank of Montreal v. Thayer, C.C. D., Iowa 1881, 7 F. 622 (negotiable certificates); People's National Bank v. Dixwell, 1914, 217 Mass. 436, 105 N.E. 435 (promissory note); National Bank of Savannah v. Kershaw Oil Mill, 4 Cir., 1912, 202 F. 90, certiorari denied 1912, 232 U.S. 725, 34 S.Ct. 602, 58 L. Ed. 816 (bill of lading); Merchant's National Bank v. Robison, 1892, 8 Utah 256, 30 P. 985 (unpaid stock certificate); Stickel v. Atwood, 1903, 25 R.I. 456, 56 A. 687 (negotiable corporate bonds); Bruff v. Mali, 1867, 36 N.Y. 200 (stock certificate); see Restatement, Torts § 532 (1938)."

"10. Cf. Davis v. Louisville Trust Co., 6 Cir., 1910, 181 F. 10, 30 L.R.A., N.S., 1011 (recovery allowed where false statements were made in a report to a mercantile agency); Graham v. John R. Watts & Son, 1931, 238 Ky. 96, 36 S.W.2d 859 (recovery allowed for misrepresentations on seed labels); Bedford v. Bagshaw, Ex.1859, 4 H. & N. 537, 157 Eng. Rep. 951 (plaintiffs recovered for reliance on false representations made to the Commissioners of the London Stock Exchange)."

"11. Prosser, Torts 732 (1941).

"12. 17 Code Fed.Regs. § 240, 10b–5 (1949).

"13. H.R.Rep.No.1383, 73d Cong. 2d Sess. 11 (1934). 'To make effective the prohibitions against manipulation civil redress is given to those able to prove actual damages from any of the prohibited practices.' Sen.Rep.No.792, 73d Cong. 2d Sess. (1934). 'Furthermore, if an investor has suffered loss by reason of illicit practices, it is equitable that he should be allowed to recover damages from the guilty party. With these considerations in view, the bill provides that *any* person who unlawfully manipulates the price of a security, or who induces transactions in a security by means of false or misleading statements, or who makes a false or misleading statement in the report of a corporation, shall be liable in damages to those who have bought or sold the security at prices affected by such violation or statements. [Emphasis added.]' See Minority Report, H.R.Rep.No.1383, 73d Cong. 2d Sess. 31, where an objection to the Securities and Exchange Act of 1934 was voiced because a suit for damages for misrepresentation is available to 'anyone who suffers.' "

decline of the Peek v. Gurney limitation at common law, impels a conclusion that the limitation should be rejected under Rule X10B–5."

Loss, Securities Regulation (1951) 1064 (and note 404), refers to the trial judge's opinion in the case at bar, and says that the absence of privity should not be a proper barrier to a claim like plaintiffs'.[3]

3. Loss does, however, question whether a suit under Rule X10B–5 is free of the restrictions that would govern a suit under § 9(e), 15 U.S.C.A. § 78i(e), a section which would also apparently apply here. But he raised the same sort of question (pp. 1061–1062) concerning our decision in Fischman v. Raytheon Manufacturing Co., 2 Cir., 188 F.2d 783, where we disregarded the kind of doubt which Loss has suggested as to Rule X10B–5. We have, then, already rejected Loss' only question here. Moreover, that question seems to stem from the fact that that Rule, as construed in the Fischman case and as I would construe it here, overlaps other specific sections which carry restrictions that do not attach to Rule X10B–5. But that Rule was issued pursuant to § 10(b) of the 1934 Act which makes it unlawful to "use or employ * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations *as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.*"[4] This left § 10 (b) inoperative unless the Commission issued a rule. When the Commission promulgated Rule X10B–5, it did not deem it "necessary or appropriate" for the public interest that the restrictions elsewhere imposed should be required in suits under that Rule.

4. My colleagues quote from our opinion in Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, 464, the statement "that Rule X–10B–5 extended protection only to the defrauded purchaser or seller." But that statement lacks relevance here since it was made in the context of that case— where the plaintiffs were neither buyers nor sellers. Moreover, the question for decision in the instant case is whether the plaintiff-purchasers were "defrauded." I think they were. "Fraud," under this statute, is not limited to common-law fraud. See Charles Hughes & Co. v. S. E. C., 2 Cir., 139 F.2d 434, 437; Hughes v. S. E. C., 85 U.S.App.D.C. 56, 174 F.2d 969, 975; Norris & Hirschberg v. S. E. C., 85 U.S. App.D.C. 268, 177 F.2d 228, 233.[5]

---

3. See also Loss at p. 1062.

4. Emphasis added.

5. Loss, Securities Regulation (1951) 816–817, says: "Now there are superimposed on this common-law background the several anti-fraud sections of the S. E. C. statutes. * * * Because of the legislative background it seems reasonable to assume at the very least that the most liberal common-law views on those questions should govern under the statutes."