HUGHES v. SECURITIES AND EX-
CHANGE COMMISSION.

No. 9853.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 14, 1949.

Decided May 9, 1949.

Mr. Donald C. McCreery, Denver, Colo., for petitioner.

Mr. Louis Loss, Associate General Counsel, Securities and Exchange Commission, Washington, D. C., with whom Messrs. Roger S. Foster, General Counsel, Securities and Exchange Commission, Alexander Cohen, Arden L. Andresen and Gerald W. Siegel, Attorneys, Securities and Exchange Commission, Washington, D. C. were on the brief, for respondent.

Mr. George F. Shea, Washington, D. C., with whom Mrs. Bertha V. Perry, Denver, Colo., was on the brief, on behalf of Bertha V. Perry, et al., amici curiae, urging reversal.

Before CLARK, PRETTYMAN, and PROCTOR, Circuit Judges.

CLARK, Circuit Judge.

The case is before this court on petition of Arleen W. Hughes, doing business as E. W. Hughes & Company, to review and set aside an order of respondent Securities and Exchange Commission revoking her registration as a broker and dealer.

Petitioner, referred to below as the registrant, has been engaged in the securities business as a broker and dealer since 1928. She is now the sole proprietor of the above-named business.[1] In 1940, petitioner was registered as a broker and dealer under Section 15 of the Securities Exchange Act of 1934, as amended.[2] In 1942, she was registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940.[3] Petitioner does business with about 175 clients residing in at least nine different states of the United States. The petitioner's place of business is Colorado Springs, Colorado. Following her registration as an investment adviser petitioner entered into a "Memorandum of Agreement" with each of her clients in which it was provided that the "Company [petitioner], when acting as investment adviser, shall act as Principal in every such transaction, except as otherwise agreed." This agreement also contained a schedule of rates and charges to be paid by the client to the petitioner. The advice which petitioner sells to her clients is based upon information she gathers and analyzes. The cost to the client for this advice or "service" is slightly higher per transaction than is the ordinary dealer profit where a dealer sells a security to a customer. Mrs. Hughes testified that her clients follow her investment advice "in almost every instance." She has used the United States mails as an instrument of interstate commerce in dealing with some of her clients in other states. Petitioner fills a client's order for the purchase of a security either by supplying it from her own inventory or by purchasing the security for her (petitioner's) own account and then selling it as principal to the client.

In the years 1944, 1945, and 1946, various members of respondent's staff, including individuals in the Commission's regional office in Denver, conducted an investigation of petitioner's business in an effort to determine whether her methods of conducting her business violated any of the anti-fraud provisions of any of the federal statutes administered by the respondent. That investigation was primarily directed toward the adequacy of the disclosure which petitioner, acting as a fiduciary, made to her clients. The investigation was accomplished through numerous oral and written discussions and communications between petitioner and respondent's agents.

On April 17, 1946, the Commission instituted the proceedings here under review by entry of an "Order for Private Proceedings and Notice of Hearing on the Question of Revocation and Suspension of Registration Pursuant to Section 15(b) of the Securities Exchange Act of 1934." This order, drawn in the nature of a complaint, alleged, inter alia, that "registrant sold securities to clients with whom she was in a fiduciary relationship, in that she purported to render to such clients impartial investment advice for compensation under an investment advisory contract, without fully disclosing to such clients the nature and extent of her adverse interest, including, among other things, (1) the best price at which such securities could be purchased for such clients in the open market in the exercise of reasonable diligence, and (2) the cost to registrant of the securities sold to such clients." The order set a time and place for hearing before a trial examiner in order to determine whether or not petitioner had violated any of the specified anti-fraud sections of the various statutes administered by the Commission. Hearing was had before the trial examiner in September, 1946, in Denver, Colorado. The examiner's report, filed with the Commission on October 29, 1946, concluded that petitioner in the conduct of her business had wilfully violated her duty as fiduciary

---

[1] From 1928 to 1939, the time of her husband's death, petitioner and her husband operated the business as a partnership under the same name.

[2] 48 Stat. 895 (1934), 49 Stat. 1377 (1936), 52 Stat. 1075 (1938), 15 U.S. C.A. § 78o (b).

[3] 54 Stat. 850 (1940), 15 U.S.C.A. § 80b-3(c).

to make full disclosure to her clients. The report also found that petitioner had violated statute and rule with regard to certain minimum audit requirements for required reports of financial condition.[4] The trial examiner's report was advisatory in nature and recited that it was not binding on the Commission. Exceptions to the examiner's report and requests for oral argument having been filed, a hearing was had before the Commission on May 20, 1947. After making an independent review of the record, the Commission issued an opinion dated February 18, 1948, in which the Commission found that petitioner was a fiduciary, that as such she was under a duty to make full disclosure of her adverse interest, that no such complete disclosure was made, and that her clients had not given their "informed consent" to her taking a position adverse to their interests. The Commission also found that the proceedings were properly based in part upon alleged violations of the Securities Act and the Securities Exchange Act, 15 U.S.C.A. §§ 77a et seq., 78a et seq., and that the violations were wilful. Accordingly, and we think properly, the Commission concluded that the "revocation of the registrant's broker-dealer registration is compelled in the public interest," to which conclusion the Commission added the following lenient and reasonable qualifying phrase, to wit, "unless we can be otherwise assured that such abuses will be immediately discontinued." Upon suggestion of Commission counsel, the Commission in this opinion went further in its effort to protect petitioner's right to continue her business and yet to effect compliance with the law. The Commission expressly withheld entry of the order of revocation for a 30-day period, within which period petitioner was invited to "submit satisfactory proof that she has corrected her methods of business operation to conform to the views expressed herein." If this were done, the Commission expressed its willingness to "enter an order dismissing this proceeding."

On the last day of the 30-day period allowed by the Commission, petitioner filed certain proposed "changes in and re-statement of her method of doing business." These alleged changes were to be incorporated in a "Supplemental Memorandum of Agreement" which petitioner proposed to enter into with each of her clients. On April 1, 1948, the Commission issued a supplemental opinion in which, after discussion of the nature of petitioner's proposed business changes, it concluded that the proposed changes were still inadequate as to the disclosure requirements set out in its original opinion and, consequently, the Commission entered an order of the same date revoking petitioner's registration as a broker and dealer. On motion of petitioner the Commission stayed the effectiveness of the order of revocation for 30 days to permit petitioner to file a petition for rehearing and to seek a further stay pending judicial review. The petition for rehearing was filed with the Commission on April 11, 1948, and denied the following day by an order which allowed a further time extension for the purpose of seeking judicial stay of the revocation order. Petition for review of the above-described Commission orders having been filed in this court, we stayed the effectiveness of the revocation order pending the present decision. Petitioner's business operations thus have not yet been interrupted in any way.

The anti-fraud provisions of the various statutes which the Commission found that petitioner wilfully violated are set forth in pertinent part as follows:

Section 17 (a) of the Securities Act of 1933:

"It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

---

[4] Although the Commission in its original opinion found that there had been wilful violation of the minimum audit requirements, this charge was abandoned by the Commission because it did not believe that, under the circumstances of the case, the public interest required "the imposition of any remedial sanctions directed against registrant by reason of this violation." Therefore, that factor is not before this court for consideration.

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." [5]

Section 10 of the Securities Exchange Act of 1934:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." [6]

Section 15 (c) (1) of the Securities Exchange Act of 1934:

"No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security (other than commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange, by means of any manipulative, deceptive, or other fraudulent device or contrivance. The Commission shall, for the purposes of this subsection, by rules and regulations define such devices or contrivances as are manipulative, deceptive, or otherwise fraudulent." [7]

The rules and regulations which have the force and effect of law and which were promulgated by the Commission pursuant to authority given by the above-quoted statutes read, so far as here pertinent, as follows:

Rule X-10B-5:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."

Rule X-15C1-2:

"(a) The term 'manipulative, deceptive, or other fraudulent device or contrivance,' as used in section 15(c)' (1) of the Act, is hereby defined to include any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

"(b) The term 'manipulative, deceptive, or other fraudulent device or contrivance,' as used in section 15 (c) (1) of the Act, is hereby defined to include any untrue statement of a material fact and any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, which statement or omission is made with knowledge or reasonable grounds to believe that it is untrue or misleading."

■■ There was filed in this court, prior to oral argument of the case and pursuant to order of this court, a brief on behalf of 120 of petitioner's 175 clients, who call themselves amici curiae. That brief purports to speak for a majority of the clients

---

[5] 48 Stat. 84–85 (1933), 15 U.S.C.A. § 77q (a).

[6] 48 Stat. 891 (1934), 15 U.S.C.A. § 78j.

[7] 48 Stat. 895 (1934), as amended, 15 U.S.C.A. § 78o (c) (1).

themselves. It argues that the clients have at all times had full knowledge and understanding of the Memorandum of Agreement and the capacity in which petitioner dealt with her clients and that the action of the Commission deprives the clients "of the right to continue to do business with Petitioner under a contractual relationship which they fully understand, and which has afforded them a high degree of investment protection, financial gain and security and financial peace of mind, * * *" Therefore, amici urge reversal of the order of revocation. Assuming arguendo the truth of the unverified statements in the amici brief, many of which are based on matters outside the record in the instant case, such statements do not constitute grounds for overturning the decision of the Commission in this case. If the Commission's decision that petitioner had wilfully violated specified anti-fraud sections of pertinent statutes and regulations is legally correct and supported by substantial evidence of record, it is immaterial whether or not a majority, or even all, of petitioner's clients understood completely the nature of their dealings with petitioner and were satisfied with, and had profited by, petitioner's method of doing business with them. Therefore, we will give no further consideration to the claims of amici for it is our understanding that the Commission is by statute empowered, and, in fact, is required to revoke a broker-dealer registration where there has been wilful violation of statute and where such revocation is in the public interest. This is true whether or not the clients of the broker-dealer happen to have knowledge of, completely understand, or condone and profit by the acts of the broker-dealer which constitute wilful violation of statute. Assuming the existence of both of the above-stated prerequisites for revocation, the revocation is proper even if one, or none, of the particular clients here involved has been misled or has suffered injury.

The Commission's power to enter the revocation order here at issue springs from Section 15 (b) of the Securities Exchange Act of 1934, as amended, which reads in pertinent part as follows:

"* * * The Commission *shall*, after appropriate notice and opportunity for hearing, by order deny registration to or revoke the registration of any broker or dealer if it finds that such denial or revocation is in the public interest and that * * * such broker or dealer whether prior or subsequent to becoming such, * * * has wilfully violated any provision of the Securities Act of 1933, as amended, or of this title, or of any rule or regulation thereunder. * * *" [8] (Emphasis supplied.)

The function of this court upon review of orders of the Commission, with respect to findings of fact by the Commission, is set forth in Section 25(a) of the Securities Exchange Act of 1934 thus:

"* * * The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. * * *" [9]

This court, speaking of this very section, recently said:

"Thus restricted and simplified, the function of the court is simply to see if the Commission's factual findings are supported by substantial evidence." [10]

The Circuit Court of Appeals for the Eighth Circuit, referring to the same statutory provision for judicial review, said:

"This means only that upon review to the courts the findings of fact must be sustained if supported by substantial evidence and those findings can not be set aside simply because different inferences may be drawn from the evidence. * * * That there must be substantial evidence does not require that there be proof beyond a reasonable doubt, * * * but only 'such relevant evidence as a reasonable mind might

---

[8] 48 Stat. 895 (1934), as amended by 49 Stat. 1377–1378 (1936), 15 U.S.C.A. § 78o (b).

[9] 48 Stat. 902 (1934), 15 U.S.C.A. § 78y (a). An almost identical provision is found in the earlier Securities Act of 1933 except that in the 1933 Act the word "substantial" is omitted. 48 Stat. 80 (1933), 15 U.S.C.A. § 77i (a).

[10] Norris & Hirshberg, Inc. v. Securities and Exchange Commission, 1947, 82 U.S.App.D.C. 32, 34, 163 F.2d 689 691, certiorari denied, 1948, 333 U.S. 867, 68 S.Ct. 788, 92 L.Ed. 1145.

accept as adequate to support a conclusion.' " [11] (Case citations omitted.)

█ The charted course is clear. In this case the Commission has expressly found that petitioner has wilfully violated the above-quoted anti-fraud sections of the two Acts. The Commission also expressly found that the revocation of petitioner's registration is in the public interest. If those two express findings have substantial evidentiary support in the record before us, we cannot set aside the order of revocation. Such support does exist in this record.

In the vast majority of transactions between this petitioner and her clients, petitioner concededly acted as a fiduciary. The record shows clearly that, except for a few isolated instances, petitioner acted simultaneously in the dual capacity of investment adviser and of broker and dealer. In such capacity, conflicting interests must necessarily arise. When they arise, the law has consistently stepped in to provide safeguards in the form of prescribed and stringent standards of conduct on the part of the fiduciary. More than 100 years ago the Supreme Court set forth this principle as follows:

"In this conflict of interest, the law wisely interposes. It acts not on the possibility, that, in some cases, the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty." [12]

But the Commission in this case did not, and we in turn do not, base the validity of the revocation order upon common law principles of fraud or deceit. Section 17 (a) of the Securities Act of 1933, Sections 10(b) and 15(c) (1) of the Securities Exchange Act of 1934, and Commission-made rules thereunder, all quoted supra, in prohibitory language, set out the statutory prescription as to the conduct of the business of a broker and dealer in securities. If any one of these statutes or rules has been wilfully violated by petitioner and revocation is found to be in the public interest, the respondent, by virtue of Section 15(b), supra, has authority to revoke.

It cannot now be doubted that, as respondent points out, the securities field, by its nature, requires specialized and unique legal treatment. This is recognized by the very statutes and regulations here under consideration as well as by recent federal and state court decisions. Thus in the Archer [13] case it was said:

"The business of trading in securities is one in which opportunities for dishonesty are of constant recurrence and ever present. It engages acute, active minds, trained to quick apprehension, decision and action. The Congress has seen fit to regulate this business. Though such regulation must be done in strict subordination to constitutional and lawful safeguards of individual rights, it is to be enforced notwithstanding the frauds to be suppressed may take on more subtle and involved forms than those in which dishonesty manifests itself in cruder and less specialized activities." [14]

█ The acts of petitioner which constitute violations of the antifraud sections of statutes and of regulations thereunder are acts of omission in that petitioner failed to fully disclose the nature and extent of her adverse interest. The Commission found that petitioner failed to disclose to her clients (1) the best price at which the securities could be purchased for the clients in the open market in the exercise of due diligence and (2) the cost to petitioner of the securities sold by her to her clients. In no less than three places in the

---

[11] Archer et al. v. Securities and Exchange Commission, 8 Cir., 1943, 133 F. 2d 795, 799, certiorari denied, 1943, 319 U.S. 767, 63 S.Ct. 1330, 87 L.Ed. 1717.

[12] Michoud et al. v. Girod et al., 1846, 4 How. 503, 554–555, 45 U.S. 503, 554–555, 11 L.Ed. 1076. Petitioner urges that the Michoud case is readily distinguishable and petitioner is correct. However, neither its age nor its distinguish-ability can detract from the force and vigor of the general doctrine set out therein.

[13] See footnote 11, supra.

[14] 133 F.2d at page 803. See also Hall v. Geiger-Jones Co. et al., 1917, 242 U.S. 539, 552, 37 S.Ct. 217, 61 L. Ed. 480, L.R.A.1917F, 514, Ann.Cas. 1917C, 643.

above-quoted statutes and regulations we find that, "any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," is expressly made unlawful. These quoted words as they appear in the statute can only mean that Congress forbid not only the telling of purposeful falsity but also the telling of half-truths and the failure to tell the "whole truth." These statutory words were obviously designed to protect the investing public as a whole whether the individual investors be suspicious or unsuspecting. The best price currently obtainable in the open market and the cost to registrant are both material facts within the meaning of the above-quoted language and they are both factors without which informed consent to a fiduciary's acting in a dual and conflicting role is impossible.

▮▮▮ Petitioner strongly urges that she has fully and completely fulfilled any disclosure requirement by the insertion in the Memorandum of Agreement (entered into with each of her clients since 1943) of the clause that the "Company, when acting as investment adviser, shall act as Principal in every such transaction, except as otherwise agreed," and that, in any event, petitioner has always stood ready to provide any further information which her clients desired. The clause inserted in the Memorandum of Agreement does not even approach the minimum disclosure requirements. In the first place, it is certainly doubtful whether petitioner's clients either knew of or understood the legal effect of this technical language inserted in fine print in the printed document which each client signed when he or she first became a client of petitioner. Secondly, even assuming, as urged by amici, that *all* of petitioner's clients are persons of more than average experience and intelligence with regard to the conceded intricacies of securities transactions, an assumption which is at best dubious in view of the present record,[15] their full knowledge

that petitioner either sold them securities she then owned or bought securities in her own name and then resold them to the clients cannot be considered sufficient knowledge to enable the clients to give their informed consent. When Mrs. Hughes took the witness stand in the proceedings below she categorically denied that she ever disclosed to her clients either the price she paid for a security, its market price, or any bid and ask prices for the security. She thereafter stated: "If at any time one of my clients wants to ask anything, why, of course, I will answer them and they all know that." Based upon petitioner's own testimony then, the Commission's finding that her disclosure was inadequate was reasonable and correct and supported by substantial evidence of record. It is not enough that one who acts as an admitted fiduciary proclaim that he or she stands ever ready to divulge material facts to the ones whose interests she is being paid to protect. Some knowledge is prerequisite to intelligent questioning. This is particularly true in the securities field. Readiness and willingness to disclose are not equivalent to disclosure. The statutes and rules discussed above make it unlawful to omit to state material facts irrespective of alleged (or proven) willingness or readiness to supply that which has been omitted.

▮▮▮ There is no room for doubt from an examination of this record that petitioner's violations were wilful. Prior to the institution of the present proceedings petitioner had been repeatedly advised by members of the Commission's staff that her methods of conducting her business were unlawful and that she should exercise her concededly good business judgment by complying with the minimum disclosure standards required of a fiduciary. In response to these repeated suggestions by Commission agents, petitioner, by letter dated June 29, 1945, stated as follows:

"It is our conclusion that our "Client" Contract and other business operations.

---

[15] Two of the nine clients who testified below showed a completely inadequate understanding of the term "principal" in the clause in their agreement with petitioner. None of the nine could recall that this term or that clause had ever been ex-plained to them by petitioner. Further, none of the nine could compute with accuracy the amount of petitioner's net profit by consulting the schedule of rates contained in the agreement.

with which you are entirely familiar, comply with the law both in letter and in spirit. Accordingly, we do not deem it necessary to make any changes in our methods of operation."

Petitioner thus intentionally and deliberately chose to continue her methods of operation in spite of repeated advice that those methods were unlawful. This was wilfulness. In the recent case of Dennis v. United States, 1948, —— U.S.App.D.C. —, 171 F.2d 986, 990, this court, in quoting from one of its earlier decisions,[16] set forth the following familiar doctrine:

"It is only in very few criminal cases that 'willful' means 'done with a bad purpose.' Generally, it means 'no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law.' " [17]

With regard to the prerequisite finding by the Commission that the revocation of petitioner's registration is in the public interest, we believe it follows irresistibly from the foregoing showing that petitioner wilfully refuses to disclose to her clients the price she pays for her securities and the best reasonably obtainable market price thereof, that the continuation of petitioner's business in its present manner is not in the public interest.

Petitioner also complains to this court that the Commission erred in not approving her suggested changes in business method in alleged conformity with the indicated Commission views as to disclosure. There is no substance to this claim. The proposed changes merely enlarged and clarified petitioner's status as principal and would have provided a more detailed rate schedule. Those changes still remain silent as to the minimum disclosure requirements with respect to market cost and firm cost. The rejection of these changes by the Commission was thus completely correct and entirely consistent with the prior rulings of the Commission with which petitioner has stubbornly refused to comply.

One final point raised by petitioner merits brief mention herein. It is said that the Commission lacks jurisdiction to enter the revocation order because petitioner's violations of the Securities and Securities Exchange Acts grew out of her conduct as an investment adviser and that the Investment Advisers Act contains its own enforcement provisions which should have been brought into play. This is an ingenious but fruitless argument. To follow this argument to its logical conclusion would be to allow a registered broker-dealer to immunize himself or herself merely by acquiring registration under the Investment Advisers Act. It is perfectly obvious that Congress contemplated no such result when it enacted that Act. The simple answer to petitioner's contention in this respect is the one given by the Commission in its original opinion, namely, that when a person is registered under both the Securities Exchange Act and the Investment Advisers Act he or she is amenable to regulation under both statutes. In the present case, petitioner's actions, as we have seen, constituted violations of the Securities and Securities Exchange Acts. Section 15(b) of the latter Act, supra, requires the revocation of the broker and dealer registration where there have been such violations. It is immaterial that the violations resulted from petitioner's conduct as an investment adviser. The situation would be otherwise if the Commission had sought to have revoked petitioner's investment adviser registration because of violations of the Securities and Securities Exchange Acts, but that is not this case. Our entire opinion concerns itself only with the revocation of petitioner's *broker-dealer registration*. There is nothing in the record before us which in any way attacks her *investment adviser registration*, which registration, we presume, is still in full force and effect.

We have disposed of above all contentions raised which we consider worthy of express mention herein. All other contentions raised by the petition for review are considered without merit. Accordingly,

---

[16] Townsend v. United States, 1938, 68 App.D.C. 223, 95 F.2d 352, certiorari denied, 1938, 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121.

[17] See also, Fields v. United States, 1947, 82 U.S.App.D.C. 354, 357, 164 F.2d 97, certiorari denied, 332 U.S. 851, 68 S. Ct. 355, 92 L.Ed. 421.

we hereby affirm the decision of the Commission from which this review was sought and hereby vacate the order of this court staying the effectiveness of the orders entered below.

Affirmed.