AVERN TRUST, Virginia P. Dooley, James A. Dooley and James A. Dooley Foundation, a corporation, Plaintiffs-Appellants,

v.

John W. CLARKE and John W. Clarke & Co., a corporation, Defendants-Appellees.

No. 16957.

United States Court of Appeals Seventh Circuit.

July 14, 1969.

Rehearing En Banc Denied Oct. 21, 1969. As Modified Nov. 24, 1969.

William Robinson Fishman, Clare J. Murphy, Robert A. Sprecher, William A. Barnett, Chicago, Ill., for plaintiffs-appellants.

John H. Bishop, James J. Flynn, Chicago, Ill., for appellee, Bishop, Burdett, Ericson & Flynn, Chicago, Ill., of counsel.

Before KILEY, SWYGERT and KERNER, Circuit Judges.

SWYGERT, Circuit Judge.

The plaintiffs in this action, James A. Dooley, his wife, Virginia, the Avern Trust, of which the Dooleys are the beneficiaries, and the James A. Dooley Foundation, a charitable corporation, seek damages for fraud and breach of a fiduciary relationship arising from a series of securities transactions during 1961–63 with the defendants, John W. Clarke & Co., a broker-dealer in securities, and John W. Clarke, its president.

The amended complaint charged the defendants with fraud by virtue of their alleged violation of sections 12(2) and 17 (a) (1) (2) and (3) of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(2) and 77q(a) (1) (2) and (3), and certain antifraud provisions and rules promulgated thereunder of the Securities Exchange Act of 1934, section 10(b) and Rule 10b–5 and section 15(c) (1) and Rule 15c1–2, 15 U.S.C. § 78j(b), 17 CFR 240.10b–5, and 15 U.S.C. § 78*o*(c) (1), 17 CFR 240.15c 1–2. The amended complaint further charged the defendants with a violation of section 15A(b) (7) of the Exchange Act, 15 U.S.C. § 78*o*–3(b) (7), and sections 1, 2 and 18 of Article III of the Rules of Fair Practice of the National Association of Securities Dealers. Compensatory damages in the amount of $152,500 and punitive damages in the amount of $295,000 were demanded.

The specific intentional and deliberate violations of the antifraud provisions of the Acts charged were that the defendants sold to the plaintiffs a substantial portion of each underwriting Clarke & Co. participated in for the purpose of realizing an underwriting profit that was larger than the commission charged in connection with the purchase of listed securities and for the purpose of avoiding any possible liability on the underwriting commitment of Clarke & Co.; that the defendants did not advise the plaintiffs of the "risks inherent" in the securities purchased by the plaintiffs; that the defendants consistently took a position adverse to the plaintiffs in that Clarke & Co. secretly dealt as a principal with the plaintiffs; and that the defendant, Clarke, made the misrepresentation that he was purchasing large blocks of securities being offered to the plaintiffs for the account of his wife and that he held large blocks of such securities.

After extensive discovery, a jury trial was held and, after denial of the defendants' motions for a directed verdict made at the close of the plaintiffs' case and after all the evidence was in, the jury returned its verdict finding the issues for the defendants. Plaintiffs' motions for judgment notwithstanding the verdict and for a new trial were denied. This appeal followed.

Since the evidence in this case is voluminous, we will discuss it only as it relates to particular errors that have been raised in this appeal. Most of the errors here relate to questions of fact that were within the province of the jury to determine. Thus, as a court of review, our inquiry is limited to deciding whether there was substantial evidence to support the jury's verdict.

The first contention presented is that the plaintiffs were entitled to a judgment notwithstanding the verdict. The standard to be applied in determining whether they were entitled to a judgment n. o. v. was recently stated by this court in Funk v. Franklin Life Ins. Co., 392 F.2d 913, 915 (7th Cir. 1968): "The motion is properly denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions."

The plaintiffs suggest that as a matter of law a fiduciary relationship existed between plaintiffs and defendants. Support for this position is said to be found in the cases of Charles Hughes & Co. v. S. E. C., 139 F.2d 434 (2d Cir.

1943), cert. denied, 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077 (1944), Hughes v. S. E. C., 85 U.S.App.D.C. 56, 174 F.2d 969 (1949), and Norris & Hirshberg, Inc. v. S. E. C., 85 U.S.App.D.C. 268, 177 F.2d 228 (1949). These authorities are not controlling here since all present substantially dissimilar factual situations and in each the finder of fact concluded from the evidence that a relationship of trust and confidence existed between a dealer and his customer, whereas, here, the jury, by virtue of its general verdict necessarily found that such a relationship did not exist. Although there was much evidence that the defendant, Clarke, promoted a friendship with Dooley for the purpose of selling him securities, there was also evidence that Dooley acted in a manner inconsistent with his claimed financial naiveté and fiduciary reliance. For example, Dooley maintained quite detailed ledger sheets covering all of his investments during the course of his dealings with the defendants. These ledger sheets reveal that Dooley had the time and interest to look after his investments and that he was aware of the nature of the securities being sold to him by Clarke, as well as Clarke's capacity. The dispute between the parties in April 1961 over the clipping by Clarke's secretary of certain municipal bond coupons belonging to Dooley and Dooley's careful comparison pricing in September 1962 of some $1,000,000 of government bonds which he intended to purchase are further evidence of Dooley's lack of complete reliance on Clarke's financial advice and services.

A major contention of the plaintiffs is that they were defrauded by Clarke in that they did not know and Clarke did not disclose to them that he was an underwriter and, thus, when he was acting as a principal in dealing with them, Clarke was making a profit as a principal. Further, the plaintiffs assert that they did not know the difference between a principal and an agent in securities transactions until 1963. This was a question of credibility for the jury. Further, the confirmation of each sale made by the defendants to the plaintiffs stated whether the confirmed sale was made with the defendants acting in their capacity as principal or agent. The jury had reason to believe that the plaintiff, Dooley, especially in light of his legal experience and the volume of his previous securities transactions, knew the difference between principal and agent transactions and was fully cognizant of Clarke's role as underwriter.

For the first time in their reply brief, the plaintiffs urge that the defendants violated section 5(b) of the Securities Act of 1933 in that they did not always accompany or precede confirmations of sale with a final form of the prospectus. This violation of section 5 (b) is said to constitute liability under section 12. At trial, the plaintiffs proceeded on the theory that the defendants failed to comply with the provisions of Rule 15c1–4, 17 CFR 240.15c1–4; promulgated under the Exchange Act of 1934. Since that rule requires only that a final prospectus be received by the customer before completion of the sale, there was no issue whether a final form prospectus preceded confirmation. The proof at trial as well as the tendered jury instructions related only to a theory of recovery under the Exchange Act Rule. Thus, the factual inquiry was whether with respect to each of the underwritings in question the plaintiffs received prior to the time payment was due a final form prospectus which disclosed that Clarke & Co. was an underwriter and the total amount of underwriting profit. The jury instructions spoke only in terms of whether a prospectus was received prior to the time payment was due. Under the circumstances, the plaintiffs are precluded from arguing a new theory of recovery for the first time on appeal. Cleary v. Indiana Beach, Inc., 275 F.2d 543 (7th Cir.), cert. denied, 364 U.S. 825, 81 S.Ct. 62, 5 L.Ed.2d 53 (1960); Miller v. Avirom, 127 U.S.App.D.C. 367, 384 F.2d 319 (D.C.Cir. 1967).

The plaintiffs claim that the business operations of Clarke & Co. were conduct-

ed in a manner similar to a "boiler-shop." There is no support in the record for this assertion. The securities sold by Clarke & Co. were not of the low-priced speculative variety normally associated with such operations. Additionally, there is no evidence of high-pressure selling methods or misrepresentations concerning the securities involved.

Despite the plaintiffs' contention, the evidence established that the plaintiffs authorized each transaction they had with the defendants. The plaintiffs rely on Dooley's testimony that the defendants purchased several issues on behalf of the plaintiffs without prior authorization. Clarke denied this testimony and stated that prior to selling each of the securities in question he discussed them with Dooley and obtained his approval to buy them. The jury believed Clarke. Dooley's testimony cannot be the basis for a judgment n. o. v.

The plaintiffs' final argument relating to its judgment n. o. v. contention is that certain "admissions" of John Clarke constituted a prima facie case of fraud and violation of a fiduciary relationship. We have considered these statements of defendant Clarke, most of which are innocuous or ambiguous, and do not view them in the light suggested by the plaintiffs.

The second major category of errors alleged by the plaintiffs pertains to the instructions given by the district court. The plaintiffs cite the giving or failure to give thirteen separate instructions as reversible error. We will only discuss the more substantial of the alleged errors, since we find no error in the instructions.

█ The plaintiffs specify as error defendants' instruction number 18, which sets forth what matters plaintiffs must prove to show a violation by defendants of section 17(a) (1) (2) and (3) of the Securities Act and Rules 10b–5 and 15c 1–2 promulgated under the Exchange Act. Plaintiffs complain that this instruction is erroneous in that the elements of wrongdoing are connected by the word "and" in the instructions given,

whereas, the Act and Rules join them by the disjunctive word "or." It is our view that the plaintiffs waived their right to raise this error since at the conference on instructions and following the court's charge, they failed to make the objection that is now being relied upon. The plaintiffs' further contention that their written objections to the instrucions contained the error now raised must fall. After leave was granted to file written objections just minutes before the jury was charged, the trial judge gave the plaintiffs an opportunity to elaborate upon the written objections. With reference to instruction number 18, plaintiffs' counsel merely stated that it was "repetitious." This was inadequate notice of the objection. Rule 51 of the Federal Rules of Civil Procedure precludes the assignment of error when no specific objection to an instruction is made. Likewise, the Supreme Court has expressly required that objections be specific. Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

Three of the instructions complained of, numbers 2, 25 and 28, were the plaintiffs' own instructions. We do not find that any jury confusion could have resulted from the asserted inconsistency between the plaintiffs' tendered instructions and the defendants' instructions numbered 18, 20 and 30. Defendants' instructions numbers 8 and 7 were taken verbatim from Mathes and Devitt, Federal Jury Practice and Instructions (1965). These instructions were not erroneous.

Plaintiffs claim a variety of evidentiary errors were committed by the trial judge. These errors are said to arise from the allowance into evidence of certain testimony adduced by the defendants and the exclusion from evidence of certain matters that the plaintiffs sought to introduce. It would serve no useful purpose to canvass these claims of prejudicial error. We have considered the claims and find them to be without merit.

Error is asserted to have resulted from the district court's striking the plaintiffs' claim for punitive damages. It is difficult to see how the plaintiffs can complain about this. Not only was their proof insufficient to persuade the jury to award compensatory damages, but also the evidence in the case was completely devoid of any hint of the wantonness, malice or impropriety that must underlie a claim for punitive damages. Further, it has been held that punitive damages cannot be recovered in a private action brought under the Exchange Act and the Rules thereunder. Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 303 F.2d 527 (10th Cir. 1952). In addition, section 12(2) of the Securities Act expressly provides that the measure of damages is recovery of "the consideration paid for such security with interest thereon."

Plaintiff alleges as error the dismissal by the district judge of the claim based on violations of section 1, 2 and 18 of Article III of the Rules of Fair Practice of the National Association of Securities Dealers. In Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir., filed April 17, 1969), this court held that there was a private right of action for violation of Rule 405 of the New York Stock Exchange in order to protect the public. The Rules of the N.A.S.D. were enacted under section 15A of the Securities and Exchange Act. 15 U.S.C. § 78o–3. Section 2 of Article III of the Rules of Fair Practice is intended "for the direct protection of investors." Lowenfels, Implied Liabilities Based Upon Stock Exchange Rules, 66 Colum.L. Rev. 12, 29 (1966). Therefore, the district judge improperly dismissed the claim for violation of section 2. However, plaintiff was not prejudiced by dismissal because the same theory was incorporated under the claim for violation of section 15 of the Securities and Exchange Act. 15 U.S.C. § 78o.

We have considered the other errors raised by the plaintiffs and find them to be without substance. This lawsuit grew out of a complicated factual background.

The issues of fraud and breach of a fiduciary relationship in the last analysis presented questions of credibility and fact. The jury was in the best position to make a determination of these facts. We are unwilling to overturn the result of a trial that lasted almost three weeks and where substantial evidence supports the jury's verdict.

The judgment of the district court is affirmed.