Sylvan SILVERMAN, Nominee,

v.

BEAR, STEARNS & CO. and Michael
E. Tennenbaum.

Civ. A. No. 70–2808.

United States District Court,
E. D. Pennsylvania.

May 6, 1971.

Neil G. Epstein, Cohen, Spector, Goodman & Epstein, Philadelphia, Pa., for plaintiff.

David H. Pittinsky, Bruce W. Kauffman, Carl H. Hanzelik, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., for defendants; Winthrop, Stimson, Putnam & Roberts, New York City, of counsel.

## OPINION AND ORDER

HAROLD K. WOOD, District Judge.

Presently before the Court is defendants' motion to dismiss plaintiff's complaint under Federal Rule 12(b), to stay proceedings under 9 U.S.C. § 3, or, in the alternative, for a change of venue under 28 U.S.C. § 1404(a).

Plaintiff is a partnership established for the purpose of investing capital in the securities market. Defendant, Bear, Stearns & Co., is a broker-dealer in securities and is a member of the New York Stock Exchange and the National Association of Securities Dealers. On May 1, 1968, the parties entered into an agreement whereby plaintiff established an account with Bear, Stearns & Co. which was to be managed by defendant Tennenbaum who was admittedly given discretionary authority to invest plaintiff's capital as he deemed advisable. Defendant Tennenbaum allegedly advised Sylvan Silverman, a partner in plaintiff, that it would be Tennenbaum's practice and course of business to incur small losses in any security which he purchased on behalf of plaintiff and which subsequently declined rather than hold the security in a declining situation and hope for eventual recovery. Between May 1, 1968 and February, 1969 defendants apparently managed plaintiff's account in accordance with this representation by Tennenbaum.

During the period from August 1, 1968 through February 12, 1969 defendants purchased for plaintiff's account 3,635 shares of common stock of Armour and Company for the total purchase price, including commissions, of $258,136.62. On February 14, 1969, pursuant to a taxable exchange, plaintiff received $218,100.00 General Host Corporation 7% Subordinated Debentures having a market value of $145,036.50 and 9,088 Warrants to purchase General Host common stock having a market value of $138,019.49. Plaintiff alleges that

during the period from February 14, 1969 through December 9, 1969, defendants also had purchased and retained for the account of Bear, Stearns and Co. and for other customers large amounts of General Host Corporation debentures and warrants. Defendants did not sell plaintiff's debentures and warrants until December 9, 1969, causing a loss to plaintiff of $128,625.73. It is plaintiff's contention that the sole reason for defendants' delay in selling plaintiff's securities was their self-interest in not lowering the market price by placing sell orders. Plaintiff subsequently instituted the present action.

Count one of plaintiff's complaint alleges violations of Section 17(a) (3) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (3) and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S. C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder by the Securities and Exchange Commission. Defendants have moved to dismiss this count for lack of subject matter jurisdiction as plaintiff has not been defrauded as a purchaser, as required for jurisdiction under § 17(a) (3) of the 1933 Act, nor has he shown, as required by 10b–5, that the alleged fraud occurred "in connection with the purchase or sale of any security."

■■■ It is defendants' position that plaintiff can seek relief under Section 10(b) and Rule 10b–5 only if his injuries arose as a result of an actual purchase or sale, Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir. 1952), cert. den. 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), whereas here, it is contended, plaintiff is merely an "aborted seller", or one who alleges that, but for an alleged fraud, he would have sold his stock and not have sustained a loss. Consequently he does not state a claim cognizable under the Act. Keers & Co. v. American Steel & Pump Corp., 234 F.Supp. 201 (S.D.N.Y.1964). Keers,

however, was a case where plaintiffs, who were minority shareholders of defendant corporation, alleged only that, relying upon a majority shareholder's oral promise that he would never sell his stock unless the sale was on terms equally advantageous to all shareholders, they refrained from selling their stock. After the majority shareholder's death, the executor of his estate sold only his shares in the corporation at a premium 55% above the market price available to plaintiffs. Defendant's motion to dismiss plaintiffs' complaint was granted on the ground that no fraud "in connection with the purchase or sale of any security" was alleged. In Keers, however, there was no purchase or sale of any security by plaintiffs, other than their original purchase of their stock which was not part of the case. It was on this ground that the court in Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D. N.Y.1965) distinguished Keers. On facts strikingly similar to the instant case, the court held that where plaintiffs wished to sell their stock purchased through defendant brokerage firm but were dissuaded from doing so by fraudulent misrepresentations on defendant's part with the result that they ultimately sold at a greater loss, the fraud was in connection with the sale of securities and gave rise to a claim under Section 10(b) and Rule 10b–5. Supra, at p. 219. We believe that such an interpretation of 10(b) and 10b–5 is in keeping with the premise that the Courts should broadly construe the statutory phrase "in connection with the purchase or sale of any security" to effectuate the Congressional intent to protect the investing public. See Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833 (2nd Cir. 1968). Accordingly we find that the alleged fraud in this case occurred "in connection with the sale of a security" and gave rise to a claim under § 10(b) of the Securities Exchange Act and Rule 10b–5.[1]

---

1. As we have concluded that plaintiff has stated a claim under § 10(b) and Rule 10b–5, it is unnecessary to determine whether a claim also arises under § 17

(a) (3) of the Securities Act of 1933. See Hirsh v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 311 F.Supp. 1283 (S.D.N.Y.1970).

Defendants have also moved to dismiss plaintiff's complaint under 12(b) (6) for failure to state a claim upon which relief can be granted. They contend that even if plaintiff's allegations as to defendants' actions are true, they do not constitute fraud. Initially defendants contend that no duty has ever been imposed upon a broker to disclose to a customer that in addition to purchasing securities of a certain corporation for that customer's account, it is also purchasing the same corporation's securities for its own account or accounts of other customers. Therefore, defendants argue, their failure to disclose to plaintiffs that they were purchasing General Host Corporation Securities not only for plaintiff's account but also for their own account and that of other customers was not a violation of Section 10(b) and Rule 10b–5. Defendants further contend that the fact that they continued to purchase General Host securities for their own account attests to their good faith belief that the securities were a good investment. Moreover, they contend, if they were buying General Host securities for their own account, it would have been in their best interest to have sold plaintiff's securities in order to lower the price at which they were buying. Finally they argue that the alleged representation by defendant Tennenbaum is not admissible into evidence, as it was an oral statement made prior to or contemporaneously with a written contract.

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We believe that the facts of this case, viewed in the light most favorable to plaintiff state a claim of fraud under Section 10(b) and Rule 10b–5. We agree with defendants that there is no recognized duty on a broker's part to disclose to its customers that it is purchasing the same securities for its own account as it is for their accounts.[2] However, the non-disclosure is only one element of plaintiff's case. When, in addition plaintiff claims that defendants misrepresented that they would sell plaintiff's securities in a declining market and then failed to do so because the sale would have devalued their own holdings, a claim of fraud is made out. See Opper v. Hancock Securities Corporation, 250 F.Supp. 668 (S.D.N.Y.1966), aff'd. 367 F.2d 157 (2nd Cir. 1966).

■ We are also unable to sustain defendants' contention that the alleged misrepresentation by defendant Tennenbaum is inadmissible as an oral contradiction of a written contract. Clearly there is a dispute between the parties as to the nature of the representation and the circumstances surrounding it. Consequently we cannot determine with certainty whether it was a prior oral statement incorporated into a final written agreement or whether it was made subsequent to the contract and completely independent of it.

Finally we note that we make no decision regarding the merits of plaintiff's case. Certainly, defendants are correct in arguing that the facts are not necessarily inconsistent with "good faith" on their part. It may develop, as defendants contend, that the case is nothing more than an attempt on plaintiff's part to shift its stock market loss to defendants. However, at this preliminary stage of the proceedings, it does not appear with certainty that under no set of facts would plaintiff be entitled to relief.

As defendants' motions to dismiss or stay proceedings on counts II and III of plaintiff's complaint were made contin-

---

2. This is not a case where a broker is making a market in an over-the-counter security, Chasins v. Smith, Barney & Co., 305 F.Supp. 489 (S.D.N.Y.1969), nor a case where a broker is acting as a principal rather than an agent, Hughes v. Securities and Exchange Commission, 85 U.S.App.D.C. 56, 174 F.2d 969 (1949).

gent on the dismissal of count I, it is unnecessary to decide them at this time.

Finally, defendants have moved pursuant to 28 U.S.C. § 1404(a) for a change of venue to the Southern District of New York. Defendants contend that all acts constituting the alleged violation occurred in New York, that defendants' records are there, that relevant witnesses reside there, that their having to travel to this district for trial will greatly inconvenience them and defendant Bear, Stearns & Co. and that defendant Tennenbaum having recently broken his leg will be particularly inconvenienced by having to travel to Philadelphia.

■■ On a motion for a change of venue, the plaintiff's choice of forum is entitled to great weight, and defendants have a heavy burden of showing a strong balance of inconvenience. Clendenin v. United Fruit Co., 214 F.Supp. 137 (E.D. Pa.1963). We do not believe that such inconvenience has been shown in this case. While it does appear that defendant Tennenbaum, presently recuperating from a serious accident, would be greatly inconvenienced by having to travel to Philadelphia at this time, there is nothing to indicate that he will not be fully recovered by the time this case is ready to proceed to trial. Moreover, plaintiff has agreed to depose Tennenbaum in New York, so he will not have to appear here before trial. The remaining considerations also indicate that the case should not be transferred to New York. Defendants will not be inconvenienced to a significantly greater degree by having this case adjudicated here than would plaintiff Silverman, a Pennsylvania resident, by having it transferred to New York. As the interests appear to us to be relatively even, plaintiff's choice of forum should prevail.